**UNITED STATES of America**

v.

**Roberto CORONADO and Robert Ray Sanchez**

**No. 1:06–CR–00267–LY.**

United States District Court, W.D. Texas, Austin Division.

March 16, 2007.

Ashley Chapman, U.S. Attorney's Office, Austin, TX, for USA, Plaintiff.

Ronald Perry Guyer, Attorney at Law, San Antonio, William H. Ibbotson, Federal Public Defender's Office, Austin, TX, for Roberto Coronado, Defendant.

Russell David Hunt, Jr., Russell D. Hunt, Jr. Attorney at Law, Austin, TX, for Robert Ray Sanchez, Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO SUPPRESS

YEAKEL, District Judge.

Before the Court in the above styled and numbered cause of action is Defendant Roberto Coronado's Motion To Suppress Evidence (Clerk's Document No. 32) and the United States's response (Clerk's Document No. 38).[1] On January 25, 2007, this Court held an evidentiary hearing on the motion, after which the parties submitted supplemental briefs with authorities for the Court's consideration (Clerk's Document Nos. 47 & 49). After considering the motion, the testimony and exhibits admitted at the January 25 hearing, including a police video recorded during the stop, the parties' supplemental briefing, the arguments of counsel, and the applicable law, the Court finds that the United States has failed to show that the law-enforcement officer on the scene had a reasonable suspicion supported by articulable facts based on objective data to initiate a traffic stop based on a violation of Texas's minimum-speed regulations,[2] and concludes that the motion to suppress should be granted.[3]

On October 5, 2006, at 11:09 a.m., Round Rock Police Officer Martin Flores stopped Defendants Coronado and Robert Ray Sanchez as they were driving a van northbound on United States Interstate Highway 35 ("IH 35") in or near Round Rock, Williamson County, Texas. As a result of the traffic stop and subsequent search of the van, police officers recovered 11.97 kilograms of cocaine. Coronado and Sanchez were each charged by indictment with one count of conspiring to possess, with the intent to distribute, five kilograms or more of a mixture and substance containing a detectable amount of cocaine. *See* 21 U.S.C. §§ 841, 846. Coronado filed a mo-

---

1. Because this Court granted Coronado's co-defendant Robert Ray Sanchez's Motion To Adopt Motions Of Other Defendants (Clerk's Document No. 39), this memorandum opinion and order applies to both Defendants.

2. *See* Tex. Transp. Code Ann. § 545.363(a) (West 1999) (titled "Minimum Speed Regulations").

3. All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

tion to suppress, adopted by Sanchez, contending: (1) that the traffic stop was pretextual; (2) Flores lacked a reasonable suspicion to stop the van; (3) the search of the van was warrantless; and (4) the arrest of Coronado and the search of the van were made without probable cause and in violation of the Fourth Amendment. U.S. Const. amend. IV; *see United States v. Brigham,* 382 F.3d 500, 506 (5th Cir.2004). Defendants seeks to suppress their arrests, the search of the van, and all evidence seized by the United States as a result of the unlawful search and seizure of the van.

■ Persons have a right "to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. A traffic stop is a seizure within the meaning of the Fourth Amendment. *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). For a traffic stop to be constitutional, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. *See United States v. Lopez–Moreno,* 420 F.3d 420, 430 (5th Cir.2005); *see also Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "This rule provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions." *United States v. Lopez–Valdez,* 178 F.3d 282, 288 (5th Cir. 1999). Supreme Court and Fifth Circuit precedent make clear that an officer's subjective intentions have no impact on analyzing reasonable suspicion or probable cause because both are based on an objective test. *See Lopez–Moreno,* 420 F.3d at 432. Thus, "[s]o long as a traffic law infraction that would have objectively jus-

tified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment." *Id.* (quoting *Goodwin v. Johnson,* 132 F.3d 162, 173 (5th Cir.1997)); *see also Whren,* 517 U.S. at 813, 116 S.Ct. 1769 (concluding that pretextual traffic stop for minor traffic infraction was constitutional because "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action").

In determining the reasonableness of a search or seizure, a two-part inquiry is made. First a determination that "the officer's action was justified at its inception," and, if so, whether any continued intrusion is "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Reasonable suspicion requires more than a mere unparticularized hunch, but considerably less than proof by a preponderance of the evidence." *United States v. Ceniceros,* 204 F.3d 581, 584 (5th Cir.2000).

Flores testified about his experience as a police officer and the circumstances related to the traffic stop of Defendants. Flores has been a police officer for six years and currently serves as an interdiction officer, who works with a canine partner. Together, they are part of a narcotics task force assigned to the Round Rock Police Department's Traffic Operations Task Force. Although Flores's patrol car is unmarked, in that it lacks lettering and a row of lights on the roof, it is conspicuously a police vehicle. It has red and blue lights mounted on the front and back of

the car and is equipped with a siren and video equipment. Flores regularly patrols sections of IH 35 in Round Rock. Flores explained that IH 35, between the Texas–Mexico border at Laredo through Texas to Minnesota, is a known drug-trafficking corridor. Flores has received specialized training related to interdiction, particularly with regard to the transportation of illegal drugs or stolen property. Flores has made numerous interdiction traffic stops in which police officers have seized substantial amounts of controlled substances, and, indeed, that is what occurred this day.

On October 5, 2006, at 11:09 a.m., the weather clear, Flores was patrolling on IH 35 near mile marker 257 or 256 when he noticed a dark blue Chevrolet van driving northbound in the left, inside, or fast lane. Flores, who was traveling in the lane immediately to the right of the left, inside lane, noticed the van because as it passed Flores, the passenger in the van, later identified as Coronado, turned, smiled, and waved at Flores. Flores testified that to him this behavior seemed unusual, so he increased his speed to catch up to the van. Traffic was significant, as is the norm for that section of IH 35. No signs designating construction zones or reduced-speed zones were present, and no emergency conditions existed. The posted speed limit was sixty-five miles per hour and there were no minimum-speed signs.

Flores had to increase his speed in the middle lane to catch up to the van, and when he got close enough to read the van's license plate, he called dispatch to check it. Although there is no evidence of the speed of the van traveling in the left, inside lane, Flores testified that the van was traveling in the regular flow of traffic. At this point, only Coronado's smile and wave had raised Flores's attention. Dispatch reported back to Flores that the van was registered to a woman in Del Rio, Texas, on the border with Mexico. Flores, based on his experience, knows that Del Rio is a source city for illegal narcotics brought into the United States from Mexico. Flores caught up to the van and observed that it continued in the left, inside lane, but that it decelerated to a speed of fifty-three miles per hour, twelve miles under the posted sixty-five mile-per-hour limit. Flores testified that he believed that the van's deceleration caused an impediment in the traffic flow in violation of Texas's minimum-speed regulations, because Flores observed approximately fifteen to twenty vehicles back up behind the van in the left, inside lane. *See* Tex. Transp. Code Ann. § 545.363(a) (West 1999).[4] Flores determined he had probable cause to make an investigatory traffic stop of the van for violating Texas's minimum-speed regulations. He quickly decided to make a traffic stop of the van and turned on his police lights, which activated the video camera in his patrol car.

As the video begins, Flores's police lights are on, and both his vehicle and the van are in the center lane, with the van moving toward the right lane. Soon after, the van stops on the right-hand shoulder of the highway. The van executed the movement to the shoulder safely. Whatever occurred before Flores activated his police lights is not depicted on the video. Thus, the van's deceleration and the back up of fifteen to twenty vehicles, is not depicted on the video. What is depicted at the beginning of the video, is five cars passing Flores in the left, inside lane.

---

4. An operator "may not drive so slowly as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law." Tex. Transp. Code Ann. § 545.363(a) (West 1999).

By their motion, Defendants contend that Flores's traffic stop was a pretextual traffic stop, because there is no evidence to support an analysis that Flores stopped the van based on a reasonable suspicion of criminal activity, rather all that is at issue is whether Flores properly stopped the van based on a violation of the minimum-speed regulations. The United States responds that in viewing the totality of the circumstances, the facts reflect that Flores had a sufficient reasonable suspicion for making the traffic stop of the van. The United States contends that Flores had the requisite reasonable suspicion that the driver of the van, Sanchez, was violating the minimum-speed regulations of Texas's traffic laws. Specifically, the United States argues that Flores recorded the van's speed at fifty-three miles per hour in the left, inside, fast lane of a posted sixty-five mile-per-hour zone, therefore despite the number of vehicles that passed Flores on the video, Flores had a reasonable suspicion to believe that the van was violating Texas's minimum-speed regulations.

Flores's stop of the van is justified if, at its inception, Flores had a reasonable suspicion based on articulable objective data that the occupants are engaged in illegal activity, or, based on *Whren,* Flores had an objectively reasonable suspicion that a traffic violation occurred or was about to occur. At the suppression hearing, Flores testified about his activities as an interdiction officer and that he has been instrumental in the seizure of illegal and controlled substances along the portion of IH 35 that he patrols. However, lacking from the record is any evidence that he stopped the van because he had a reasonable suspicion that its occupants, Defendants Coronado and Sanchez, were engaged in illegal narcotics activity. After the van's passenger smiled and waved at him, he ran a check on the vehicle because he thought the behavior unusual, not that such activity

gave him a reasonable suspicion, based on his experience as an interdiction officer, that the van's occupants might be engaged in criminal activity. At that point, based on the totality of the circumstances, Flores needed to have an objectively reasonable suspicion that Sanchez committed or was about to commit a traffic offense in order to stop the van absent a warrant. Again, the sole stated basis for Flores's stop of the van was that he believed he could stop the van because he had observed a traffic violation, that is that the van was impeding the normal and reasonable movement of traffic in violation of Texas minimum-speed regulations. The Court must determine whether, objectively, Flores had a reasonable suspicion that some sort of illegal activity, in this instance a violation of Texas's minimum-speed regulations, occurred or was about to occur, before stopping the van. *See Lopez–Moreno,* 420 F.3d at 430; *see also Whren,* 517 U.S. at 809–10, 116 S.Ct. 1769.

The Court notes a dearth of Fifth Circuit authority addressing Texas's minimum-speed regulations as a basis for a warrantless traffic stop and neither side has directed the Court to any such authority. Both sides, however, direct the Court to Texas state-court appellate opinions and a federal district-court opinion that address Texas's minimum-speed regulations. *See State v. Rivenburgh,* 933 S.W.2d 698 (Tex.App.-San Antonio 1996, no pet.); *Green v. State,* 773 S.W.2d 816 (Tex.App.-San Antonio 1989, no pet.) (both opinions holding that vehicles *stopped* in lane of traffic violated Texas's minimum-speed regulations); *Davy v. State,* 67 S.W.3d 382 (Tex.App.-Waco 2001, no pet.); *Richardson v. State,* 39 S.W.3d 634 (Tex.App.-Amarillo 2000, no pet.) (both opinions holding no violation of minimum-speed regulations as little or no traffic to impede); *Moreno v. State,* 124 S.W.3d 339 (Tex.

App.-Corpus Christi 2003, no pet.) (upholding stop for impeding traffic when vehicle traveling twenty miles below speed limit in medium to heavy traffic with cars backed up); *Texas Dept. of Pub. Safety v. Fisher*, 56 S.W.3d 159 (Tex.App.-Dallas 2001, no pet.) (license suspension proceeding with substantial evidence review and court found defendant produced only controverting evidence which was insufficient to overcome lower court holding that officer had reasonable suspicion that impeding traffic when driving ten miles under speed limit in left, inside fast lane); *United States v. Ross*, 400 F.Supp.2d 939 (W.D.Tex.2005) (upheld traffic stop on basis other than impeding traffic, officer followed vehicle to determine other basis for stop). The United States also directs the Court to federal-court opinions interpreting similar statutes in other circuits.[5] The Court finds the facts presented here distinguishable from the facts presented in the cases cited by the parties.

■ This Court finds that based on the evidence presented, the United States fails to show that Flores had an objectively reasonable suspicion that the van was in violation of Texas's minimum-speed regulations to justify the stop of the van. The Texas Transportation Code requires that "[a]n operator may not drive so slowly as to impede the normal and reasonable movement of traffic." Tex. Transp. Code Ann. § 545.363(a). A violation only occurs when the normal and reasonable movement of traffic is impeded. Absent from the record is evidence of how long Flores observed the back up of cars behind the van in the left, inside lane, and whether the van, which was briefly traveling twelve miles under the posted speed limit, was impeding the normal and reasonable movement of traffic. *See Ross*, 400 F.Supp.2d at 946 (vehicle traveling 35 miles per hour in a 50 mile-per-hour construction zone was not impeding traffic). Although Flores testified that there were ten to fifteen cars behind the van, the video shows that only five passed Flores when he determined to stop the van and turned on the video camera. Further, the video reflects that traffic was not so heavy that there were impediments to those vehicles's ability to change lanes and pass the van. *See Richardson*, 39 S.W.3d at 639. Of most importance, Flores testified that the van began to slow down as he accelerated toward and pulled in behind it. He recognized that the van's deceleration could have resulted from the approach of his patrol car. *See* Tex. Transp. Code Ann. § 545.156(a) (1999) (addressing drivers' responsibilities when authorized emergency or law-enforcement vehicles approach). Although Flores was not using an audio or visual signal until he was behind the van and had observed its deceleration, the Court notes that it is neither abnormal nor dangerous driving behavior for a driver to slow down with the approach of a law-enforcement vehicle.

For these reasons, the Court finds that the record fails to support a reasonable suspicion that the van was impeding the normal and reasonable movement of traffic. Having determined that objectively the traffic stop was not based on a reasonable suspicion, the investigatory stop is unsupported by a reasonable suspicion and the arrest of Defendants and evidence obtained as a result of that stop must be excluded. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

---

**5.** *United States v. Pineiro,* 121 F.3d 710 (6th Cir.1997); *United States v. Miller,* 20 F.3d 926 (8th Cir.1994); *United States v. Neu,* 879 F.2d 805 (10th Cir.1989); *United States v. Vasquez,* 94 Fed.Appx. 719 (10th Cir.2004); *United States v. Borrego,* 66 Fed.Appx. 797 (10th Cir. 2003);.

The Court observes that Officer Flores, relying on his training, experience, and, perhaps, a strong feeling or hunch that the van was transporting contraband, executed a safe stop of the van, which resulted in the discovery and seizure of a large quantity of an illicit drug. In this instance, he performed his job well. However, the Constitution requires more than intuition to validate a traffic stop. The end that he was correct in his assumption does not justify the means to reach that end. The slowing of a private vehicle upon the approach of a law-enforcement vehicle, under the facts and circumstances presented by this case, does not give rise to an objectively reasonable suspicion that a traffic violation occurred or is about to occur.

**IT IS ORDERED** that the Motion To Suppress Evidence (Clerk's Document No. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' arrests, all evidence obtained as a result of the search of the vehicle made without a warrant, is suppressed and the United States shall not be permitted to use such at trial.