NO.
12-06-00080-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

VICTOR THOMAS,  §                      APPEAL FROM THE 114TH

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      SMITH
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Victor
Thomas appeals his conviction for possession of a controlled substance.  In seven issues, he contends that the
evidence is legally and factually insufficient to support his conviction and
that the trial court made errors in admitting evidence.  We affirm.

 

Background








            Appellant
and Melton McMorris were traveling through Smith County, Texas on Interstate 20
in an eighteen wheel tractor trailer. 
McMorris was driving.  Appellant
owned the tractor, and McMorris owned the trailer.  McMorris had filed papers with the State of
Mississippi the day before, registering the tractor and the trailer in his name
and listing Appellant as the owner of the tractor.  A Smith County sheriff’s deputy pulled the
men over after he observed the driver of the truck commit traffic
violations.  After stopping the truck, he
smelled marihuana from somewhere in the vicinity of the trailer, and a dog
trained to detect illegal drugs was brought to the scene.  The dog alerted to the presence of illegal
drugs in the trailer, and the officer opened the trailer.  The police found the trailer virtually empty,
but with what looked like brand new decking on the walls of the trailer.  Upon further inspection, the police found a
secret compartment built inside the front wall of the trailer.  Inside a container behind the false wall they
found at least 1,800 pounds of marihuana and approximately twenty kilograms of
cocaine.  One of the officers asked
Appellant how much the narcotics weighed. 
He said, “I can’t even begin to tell you.”

            A
Smith County grand jury indicted Appellant and McMorris for the felony offense
of possession of cocaine in an amount of more than 400 grams.  A trial was held, and Appellant pleaded not
guilty.  The jury found Appellant
guilty.  After a separate punishment
hearing, the jury assessed punishment at fifty–five years of imprisonment.  This appeal followed.

 

Motion to
Suppress

            In
his first issue,[1] Appellant argues the initial traffic stop was illegal
and that the trial court should have granted his motion to suppress the
evidence for that reason.

Standard of Review

            We
review a trial court’s ruling on a motion to suppress in the light most
favorable to the ruling.  See State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  A trial court judge is uniquely situated to
observe the demeanor and appearance of a witness and to make factual
determinations.  See State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 
Therefore, the trial court is the sole trier of fact, and we afford
almost total deference to the trial court’s factual conclusions when reviewing
a ruling on a motion to suppress.  See
Wiede v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).  We afford the same deference to the trial
court’s rulings on “application of law to fact questions,” also known as “mixed
questions of law and fact,” if the resolution of those ultimate questions turns
on an evaluation of credibility and demeanor. 
See Montanez v. State, 195 S.W.3d 101, 106 (Tex. Crim.
App. 2006).  We review de novo wholly
legal conclusions as well as mixed questions of law and fact that do not turn
on an evaluation of credibility and demeanor. 
Id.  The trial court’s
ruling will be upheld if it is reasonably supported by the record and is
correct on any theory of law applicable to the case.  Ross, 32 S.W.3d at 855–56; Villarreal,
935 S.W.2d at 138.

 

Applicable Law and Analysis

            The
Fourth Amendment to the United States Constitution prohibits unreasonable
searches and seizures. U.S. Const.
amend. IV.  The Texas Constitution
contains a similar prohibition.  See Tex. Const. art. I, § 9.  A warrantless search is unreasonable unless
it falls within certain specific exceptions. 
See Flippo v. West Virginia, 528 U.S. 11, 13, 120 S. Ct.
7, 8, 145 L. Ed. 2d 16 (1999); McGee v. State, 105 S.W.3d 609,
615 (Tex. Crim. App. 2003).  One such
exception is that a law enforcement officer may stop a vehicle if the officer
observes the driver of the vehicle commit a traffic violation.  Walter v. State, 28 S.W.3d 538,
542 (Tex. Crim. App. 2000) (citing Whren v. United States, 517
U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996)). 

            In
this case, the officer testified that he observed the driver of the tractor
trailer commit three traffic offenses. 
Specifically, the officer testified, and the trial court found, that the
driver drove on the shoulder, Tex.
Transp. Code Ann. § 545.058 (Vernon 2006), did not maintain a safe
speed,   Tex. Transp. Code Ann. § 545.363
(Vernon 2006), and did not have proper mudflaps on the vehicle.  Tex.
Transp. Code Ann. § 547.606 (Vernon 2006).

            McMorris
testified at a hearing on the motion to suppress.  His testimony did not contradict the officer’s
testimony in a dramatic fashion, although he did state that the photograph of
the mudflap was different than he remembered it.  He also testified that the flap, as it was
depicted in a photograph, was a violation of the statute.  Texas Transportation Code, Section 547.606
provides, inter alia, that mudflaps are to be of a type prescribed by the Texas
Department of Transportation.  The
department has promulgated rules requiring that “safety guards or flaps” be “rigid
enough to prevent slush, mud, or gravel being transmitted from the vehicle’s
rear wheels to the windshield of the following vehicle” and “not split or torn
to the extent that [they are] ineffective.” 
37 Tex. Admin. Code §
21.1(g)(7), (8) (West 2007).  The officer
testified that the torn mudflap was a concern because rocks and debris could go
through a tear and strike a vehicle.  He
also expressed concern that the flap itself, or some part of it, could come
loose and strike a vehicle.  The first
concern is sufficient to support the ruling of the trial court.  Appellant argues that the officer’s testimony
was ambiguous as to whether he was testifying about the flap on the very back
of the trailer or the back of the tractor and that he discovered the defect
only after stopping the vehicle.  These
are factual determinations, and we defer to the trial court’s resolution of
these issues.

            With
respect to the failure to maintain a safe speed, the relevant statute provides
that an “operator may not drive so slowly as to impede the normal and
reasonable movement of traffic, except when reduced speed is necessary for safe
operation or in compliance with law.”  Tex. Transp. Code Ann. §
545.363(a).  The officer testified that
he observed the truck slow rapidly from sixty–five miles an hour to fifty miles
an hour, that there were eight or nine cars behind the vehicle, and that those
vehicles had to slow and apply their brakes. 
The State argues that the trial court should be sustained on this issue
because it was the officer’s “undisputed opinion” that this action was a
violation of Section 545.363.  This
argument is unpersuasive.  The court of
criminal appeals has held that an officer’s conclusion that the law had been
violated is not sufficient for the State to carry its burden to show an
exception to the general requirement for warrant.  See Ford v. State, 158 S.W.3d
488, 493 (Tex. Crim. App. 2005).  Rather,
there must be specific, articulable facts from which a court can assess whether
the officer reasonably concluded that a person actually was, had been, or soon
would have been engaged in criminal activity. 
Id.

            We
defer to the trial court’s factual findings, and so we will accept the officer’s
testimony that there was “traffic that was behind him that was flowing at the
same speed as him, and then he slowed down, coming up on me, and the cars
[were] having to hit their brakes,” that the reduction in speed was “pretty
rapid,” and that there were eight or nine cars behind the vehicle.  Pursuant to Ford, we do not
credit his conclusory statements about the statute being violated because they
provide no specific or articulable facts from which to find that the State had
proven a violation of the law.[2] 
The question then is whether slowing from sixty–five miles an hour to
fifty and causing eight or nine cars to brake is impeding the normal and
reasonable movement of traffic. 

            In
Moreno v. State, 124 S.W.3d 339, 346–47 (Tex. App.–Corpus Christi
2003, no pet.), the court of appeals held that a reduction of speed to twenty–five
miles per hour in a forty–five miles per hour zone which caused the medium to
heavy traffic in the area to back up while the cars behind the driver waited
for the other lane of traffic to clear was a violation of the statute.  In Richardson v. State, 39
S.W.3d 634, 638–39 (Tex. App.–Amarillo 2000, no pet.), the court held that the
statute was not violated because there was no proof of any traffic that was
impeded by a slow driver.  See also
Davy v. State, 67 S.W.3d 382, 392–93 (Tex. App.–Waco 2001, no
pet.).  And in United States v.
Coronado, 480 F. Supp. 2d 923, 928 (W.D. Tex. 2007), a federal trial
court applying Texas law held that the government failed to show reasonable
suspicion that a driver had impeded traffic because there was no evidence of
how long the officer observed any backup of cars behind the vehicle, and no
evidence that the vehicle, which was briefly traveling twelve miles under the
posted speed limit, was impeding the normal and reasonable movement of
traffic.  

            Although
Coronado is not binding authority, it is persuasive in this
case.  This is not a case where the vehicle
was stopped in the road.  See, e.g., State
v. Rivenburgh, 933 S.W.2d 698, 702 (Tex. App.–San Antonio 1996, no
pet.); State v. Green, 773 S.W.2d 816, 818 (Tex. App.–San Antonio
1989, no pet.).  The relevant testimony
was that eight or nine cars had to apply their brakes when the truck
decelerated from sixty–five miles an hour to fifty.  In some instances this could impede the “normal
and reasonable movement of traffic,” but we do not think the transportation
code is to be so narrowly construed that a driver breaks the law every time he
decelerates and causes those behind him to brake.  Application of brakes and overpassing of
slower traffic are part of the normal flow of traffic.  There was no testimony that traffic was
backed up or stopped, or that the other drivers were impeded beyond the
ordinary and reasonable flow of traffic. 
The officer’s conclusory statements that the driver violated the law
cannot be a basis to affirm the trial court’s ruling.  Crediting the facts to which the officer
testified to, that the driver slowed his truck and a number of cars had to
apply their brakes, the evidence is not sufficient to show as a matter of law
that the driver impeded the normal and reasonable flow of traffic.

            Finally,
the officer testified, and the trial court found, that the truck drove onto the
shoulder on two occasions, violating Texas Transportation Code, Section
545.058.  Section 545.058 provides that a
driver may travel on an improved shoulder only in certain circumstances, none
of which are present here.  Appellant
does not address this finding.  Instead,
Appellant argues that the driver did not violate Section 545.060(a) of the
transportation code.  

            These
statutes are not the same.  Section
545.060 provides that a driver must drive in a single lane but may move out of
that lane if the movement can be made safely. 
By contrast, Section 545.058 does not allow for free travel on the
shoulder.  Rather, it allows a driver to drive
on the shoulder when necessary, when it can be done safely, and in one of
several enumerated instances, for example, to park or to avoid a
collision.  Even if it was safe to do so,
a contention the State contests, there was no evidence that it was necessary
for the driver  to drive on the shoulder
and none of the enumerated instances where shoulder driving is permissible were
present.  Therefore, the officer was
justified in pulling Appellant over when he saw him drive on the shoulder.  See Tyler v. State, 161 S.W.3d
745, 750 (Tex. App.–Fort Worth 2005, no pet.).

            The
trial court’s findings that the officer observed the driver of the eighteen
wheeler operate the vehicle on the shoulder and without the proper flaps are
supported by the record.  The trial court’s
legal conclusions that these were violations of the transportation code and
that a traffic stop was justified are correct. 
Therefore, we overrule Appellant’s first issue.

 

Sufficiency
of the Evidence

            In
his second and third issues, Appellant argues that the evidence is legally and
factually insufficient to support the verdict. 
Specifically, he contends that there was insufficient evidence to show
that he knowingly or intentionally possessed the cocaine found in the trailer.

Standard of Review

            The due process guarantee of the
Fourteenth Amendment requires that a conviction be supported by legally
sufficient evidence.  See Jackson
v. Virginia, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed.
2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim.
App. 2004); Willis v. State, 192 S.W.3d 585, 592 (Tex. App.–Tyler
2006, pet. ref’d).  Evidence is not
legally sufficient if, when viewing the evidence in a light most favorable to
the verdict, no rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. 
See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; see
also Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

            While legal sufficiency review is all that is required by
the U.S. Constitution, the Texas Court of Criminal Appeals has determined that
the Texas Constitution requires further review of the factual sufficiency of
the evidence.  Clewis v. State,
922 S.W.2d 126, 129–30 (Tex. Crim. App. 1996). 
We review the factual sufficiency of the evidence to determine whether,
considering all the evidence in a neutral light, the evidence supporting the
conviction is too weak to withstand scrutiny or the great weight and
preponderance of the evidence contradicts the jury’s verdict to the extent that
the verdict is clearly wrong and manifestly unjust.  See Watson v. State, 204 S.W.3d
404, 414–15, 417 (Tex. Crim. App. 2006).

            Under either standard, our role is that of appellate
review, and the fact finder is the sole judge of the weight and credibility of
a witness’s testimony.  Wesbrook v.
State, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000).  The fact finder may choose to believe all,
some, or none of a witness’s testimony. 
Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

Applicable Law

            As alleged in the indictment, the State was required to
prove that Appellant intentionally or knowingly possessed cocaine in an amount
of more than 400 grams.  Tex. Health & Safety Code Ann. §
481.115(f) (Vernon 2006); Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).  Possession means
“actual care, custody, control, or management” of an item.  Tex.
Health & Safety Code Ann. § 481.002(38) (Vernon 2006).  The evidence used to prove these elements can
be either direct or circumstantial.  Brown,
911 S.W.2d at 747.

            When the proof is circumstantial, the State must
establish that the accused’s connection to the substance was more than just
fortuitous.  Id.  Furthermore, when the accused is not in
exclusive possession of the place where the substance is found, it cannot be
concluded that the accused had knowledge of and control over the contraband
unless there are additional independent facts and circumstances that
affirmatively link the accused to the contraband.  See Poindexter v. State,
153 S.W.3d 402, 406 (Tex. Crim. App. 2005). 


            Courts have recognized as many as seventeen nonexclusive
factors that may be considered when evaluating affirmative links.  The factors include (1) whether the
contraband was in plain view or recovered from an enclosed place; (2) whether
the accused was the owner of the premises or had the right to possess the place
where the contraband was found, or was the owner or driver of the automobile in
which the contraband was found; (3) whether the accused was found with a large
amount of cash; (4) whether the contraband was conveniently accessible to the
accused or found on the same side of the vehicle as the accused was sitting;
(5) whether the contraband was found in close proximity to the accused; (6)
whether a strong residual odor of the contraband was present; (7) whether the
accused possessed other contraband when arrested; (8) whether paraphernalia to
use the contraband was in view or found on the accused; (9) whether the
physical condition of the accused indicated recent consumption of the
contraband in question; (10) whether conduct by the accused  indicated a consciousness of guilt; (11)
whether the accused attempted to escape or flee; (12) whether the accused made
furtive gestures; (13) whether the accused had a special connection to the
contraband; (14) whether the occupants of the premises gave conflicting
statements about relevant matters; (15) whether the accused made incriminating
statements connecting himself to the contraband; (16) the quantity of the
contraband; and (17) whether the accused was observed in a suspicious place
under suspicious circumstances.  See Willis
v. State, 192 S.W.3d 585, 593 (Tex. App.–Tyler 2006, pet. ref’d) (citing
Lassaint v. State, 79 S.W.3d 736, 740–41 (Tex. App.–Corpus Christi
2002, no pet.)); see also Poindexter, 125 S.W.3d at 405, n.7. 

Analysis

            The evidence in this case did not show that Appellant
possessed the twenty kilograms of cocaine on his person.  The evidence did show that Appellant owned
the tractor and was traveling with McMorris, who owned the trailer.  The question is whether the evidence is
sufficient to show that he knew the cocaine was in the trailer and was working
together with McMorris to transport it.

            Someone had recently made substantial renovations to the
trailer, including adding new interior walls and a well built, false interior
wall that concealed a trap door
and a secret compartment that had been welded to the bottom of the
trailer.  In addition to the more than
forty pounds of cocaine, the secret compartment also contained at least 1,800
pounds of marihuana.  An officer
testified that the street value of the drugs was nearly $13 million.  There were tools that could be used to gain
access to the secret compartment through the cab of the truck as well as
through the trailer, and there were rivets in the trailer consistent with those
used to install the false wall.  Finally,
an officer found marihuana seeds and stems in the cab of the truck, and
Appellant had more than $3,000 cash on his person, despite not being able to
describe any formal employment.

            The evidence also showed that McMorris was nervous, he
had registered the truck and trailer the day before in Mississippi, and the two
men offered different stories when describing their journey.  Examining the evidence in the light most
favorable to the jury’s verdict and in light of the nonexclusive factors set
forth above, we conclude that the jury could have reasonably determined beyond
a reasonable doubt that Appellant knowingly and intentionally possessed the
cocaine hidden in the trailer.  The most
persuasive factor is the sheer quantity of drugs and the industry required to
put them in the trailer along with Appellant’s statement to the police officer
that he  could not “even begin to tell”
him how much the drugs weighed.  As
Appellant notes, this statement was made after the drugs were found and could,
strictly speaking, be consistent with a lack of prior knowledge of the
drugs.  But a rational jury could infer
from the statement that Appellant knew the drugs were there and in such a
quantity that he could not accurately describe it.  Finally, the old records in the truck, which
showed Appellant as a co-driver years in the past, along with Appellant’s
ownership of the tractor and the recent registration of the tractor by
McMorris, are sufficient for the jury to conclude that the two men were working
together.  We hold that the evidence was
legally sufficient to support the jury’s verdict.

            We reach the same conclusion under a neutral review of
the evidence.  We have reviewed the
record in its entirety.  We are mindful
that our evaluation must not substantially intrude upon the jury’s role as the
sole judge of the weight and credibility of witness testimony.  See Santellan, 939
S.W.2d at 164.  We also recognize that
there is no set formula for finding an affirmative link, but rather affirmative
links are established by a consideration of a totality of the circumstances.  See Hyett v. State, 58 S.W.3d 826,
830 (Tex. App.–Houston [14th Dist.] 2001, pet. ref’d).

            Given the circumstances of this case, we conclude that
the jury was entitled to find that the evidence tending to link Appellant to
the cocaine in question was of greater consequence than the evidence not
tending to so link Appellant.  Applying
the factor approach strictly, there are factors that weigh against the
conviction.  Appellant was not under the
influence of a controlled substance and did not have the controlled substance
on his person or conveniently accessible to him.  There was nothing about his demeanor or
actions, i.e., he did not flee, that was consistent with a consciousness of
guilt.  On appeal, Appellant offers
innocent explanations for why the two men did not offer the same history of
their journey, why a log was not kept, and how it came to be that the men were
transporting millions of dollars in contraband without knowing it.  On page 47 of the brief, in a section
captioned “Here is what happened,”[3] Appellant offers an explanation that
includes details—the two defendants had never opened the trailer, had not seen
the trailer for months, and Appellant was wrong about where they had been
because he had been asleep—derived from McMorris’s testimony at his suppression
hearing, but not introduced before the jury. 
To the extent that it is a hypothetical scenario against which the jury’s
verdict can be tested, the jury could have reasonably rejected the
hypothesis.  

            The evidence is much more susceptible to the conclusion
that persons who have millions of dollars in illegal contraband, and go to the
trouble of fabricating a false wall in a semitrailer, do not simply give that multimillion
dollar trailer to a pair of unwitting truck drivers.  The presence of marihuana residue in the cab,
the strong odor of marihuana in the interior of the trailer, and the amount of
cash Appellant had on his person are all factors that weigh in favor of
conviction, if not overwhelmingly.  But
the evidence, including Thomas’s statement, the inference that the men were
working together, the lack of an explanation for the trip, and the sheer volume
of the illegal drugs leads to the conclusion that Appellant’s possession of the
cocaine was knowing. 

            Our review of the record as a whole, with consideration
given to all of the evidence, both for and against the jury’s finding, has not
caused us to conclude that the proof of guilt is so obviously weak or is
otherwise so greatly outweighed by contrary proof as to render Appellant’s
conviction clearly wrong or manifestly unjust. 
Therefore, we hold that the evidence is factually sufficient to support
the jury’s verdict.  Appellant’s second
and third issues are overruled.

 

Admission of Evidence

            In his fourth and fifth issues, Appellant argues that
evidence that marihuana was found along with the cocaine in the secret
compartment in the trailer was inadmissible collateral misconduct evidence,
that its probative value was outweighed by its prejudicial impact, and that the
trial court should not have admitted testimony about the marihuana or the
marihuana itself.

Standard of Review

            These issues are not preserved for review.  To preserve a complaint for appeal, a defendant
must object, state the grounds for the objection with sufficient specificity,
and obtain an adverse ruling.  Tex. R. App. P. 33.1 (a)(1)(A); Wilson
v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).  The denial of a motion in limine does not preserve
a complaint.  Roberts v. State,
220 S.W.3d 521, 533 (Tex. Crim. App. 2007); Martinez v. State, 98
S.W.3d 189, 193 (Tex. Crim. App. 2003).  

            The only potential objection raising these issues came
during a pretrial discussion of the lifting of a motion in limine preventing
the State from mentioning the marihuana in its opening statement.  Appellant’s counsel objected to lifting the
motion in limine on the grounds that the argument violated Texas Rules of
Evidence 403 and 404, the complaint raised here, and because the State had
destroyed most of the marihuana prior to trial. 
The trial court overruled the objections and allowed the State to
discuss the marihuana in its opening statement. 
Thereafter Appellant made objections based on the spoliation issue, but
never renewed an objection based on Rules 403 or 404 and did not object on that
basis when the evidence was admitted. 
Because a motion in limine does not preserve a complaint, Appellant has not
preserved this complaint for our review.

            Even if Appellant had preserved this issue, the trial
court’s implicit ruling is not in error. 
We review rulings on Rules of Evidence 403 and 404 for an abuse of
discretion.  See Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).  Under Rule 404(b), evidence from the same
transaction as the charged offense is admissible as contextual evidence “to the
extent that it is necessary to the jury’s understanding of the offense.”  See McDonald v. State,
179 S.W.3d 571, 577 (Tex. Crim. App. 2005). 
Such evidence is admissible “only when the offense would make little or
no sense without also bringing in the same transaction evidence” and when
several offenses are so intermixed or connected as to form “a single,
indivisible criminal transaction, such that in narrating the one, it is
impracticable to avoid describing the other.” 
Id.

            In this instance, the cocaine and the marihuana were part
of the same transaction and were not only intermixed and connected logically,
but physically as well.  The evidence was
relevant for two reasons.  First, the
jury was instructed that they could consider whether the officer acquired
probable cause to search the vehicle during the traffic stop, and further
instructed that it should acquit if it found that the search of the vehicle was
done without probable cause.  The officer
testified that he smelled the odor of raw marihuana, a smell which he later
learned emanated from the large quantity of marihuana in the secret compartment,
and a drug dog alerted on the truck.  From the evidence, it cannot be said whether
it was the smell of marihuana or cocaine that drew the dog’s attention, but the
officer’s testimony about the obvious marihuana smell reinforced the inferences
to be drawn from the testimony about the dog alerting on the truck.  The evidence of the marihuana in the truck
was necessary to show the officer’s probable cause to search the truck.  

            Second, keeping evidence about the marihuana from the
jury would deprive them of an understanding of the offense.  One of the most powerful inferences from the
evidence came from the sheer volume of the contraband and the attendant
unlikelihood that the possession of millions of dollars of illegal drugs could
be accomplished unwittingly.  There was a
large quantity of cocaine, but the additional marihuana, nearly a ton of it,
was an important part of the State’s argument that it was logical to infer that
so large a load would not fall unwittingly into Appellant’s hands.  The trial court did not abuse its discretion
when it determined that the marihuana evidence was admissible either to show
probable cause or as contextual evidence.

            The trial court did not err when it found that the
probative value of the marihuana outweighed the prejudicial harm caused by its
admission.  The testimony about the
marihuana was crucial when it came to evaluating the propriety of the officer’s
search of the semitrailer.  Even absent
the State’s right to prove probable cause to search the truck, since Appellant
requested that the question be submitted to the jury, we are not persuaded that
any unfair prejudice accrued to Appellant from the admission of the
marihuana.  To be sure, possession of
marihuana is a crime, and possession of nearly a ton of marihuana is a serious
crime.  And, as we outlined above, the
quantity of marihuana made a conviction more likely because, when coupled with
the cocaine, it made a claim of innocent possession even more unlikely.

            But the principal evil to be avoided when it comes to
Rule 404(b) evidence is the “forbidden inference” that the defendant is a bad
person and that he must have committed the charged offense because he committed
an uncharged act.  See, e.g.,
Johnston v. State, 145 S.W.3d 215, 222 (Tex. Crim. App. 2004); Bishop
v. State, 869 S.W.2d 342, 345 (Tex. Crim. App. 1993) (“The intent of
this rule is to prevent the introduction of evidence to prove the character of
a person in order to show that he acted in conformity with that character.”).  Here, the cocaine and the marihuana were both
sealed in a single box, welded to the frame of the trailer, and hidden behind a
false wall.  It does not seem possible
that a person could exercise care, custody, or control over one item and not
the other.  Whoever possessed the cocaine
also possessed the marihuana.  The inference
that Appellant is a bad person because he possessed marihuana and therefore he
must have possessed the cocaine is the forbidden inference.  The inference that a person is unlikely to
accidentally possess millions of dollars worth of illegal narcotics is not the
forbidden inference.  We perceive no
danger of a forbidden inference, and no unfair prejudice to Appellant from the
admission of the marihuana.  We overrule
Appellant’s fourth and fifth issues.

 

Impeachment of Character Witness

            In his sixth and seventh issues, Appellant argues that
the trial court erred when it permitted the State to ask his sister if she knew
that he had been arrested for two other criminal offenses. Specifically, he
argues that the State did not prove beyond a reasonable doubt that he had
committed the offenses for which he had been arrested, the fact that the cases
had been dismissed precluded the questions, and that the witness’s testimony
did not open the door to this kind of cross examination.

            Appellant’s sister testified as a character witness.  While testifying about Appellant during his
years in high school, she testified that Appellant did not get into trouble and
that he was not a violent person.  The
State asked her if she was aware that Appellant had been arrested for
possession of a handgun and for aggravated assault.  She answered that she did not, and no
evidence about the arrests was offered. 

Analysis

            As Appellant recognizes, the court of criminal appeals
has recently addressed “did you know” questions asked of character
witnesses.  See Wilson v. State,
71 S.W.3d 346, 349-51 (Tex. Crim. App. 2002). 
The court reiterated that a witness who testifies to a defendant’s good
character may be cross examined to test the witness’s awareness of relevant “specific
instances of conduct.”  Wilson,
71 S.W.3d at 350 (citing Tex. R. Evid.
405).[4]  This right of cross examination has two
limitations: (1) the prior instances must be relevant to a character trait at
issue; and (2) the prior instances must have a basis in fact.  Wilson, 71 S.W.3d at 350–51.  

            Appellant argues that the questions were impermissible
because the arrests were not reduced to convictions and were irrelevant because
the sister was speaking about Appellant when he was in high school.[5]  With respect to the arrests not being final
convictions, Rule 405 is different from the rule for admitting extraneous
offenses in the punishment phase of trial. 
As Appellant points out, Article 37.07, code of criminal procedure,
disallows evidence of an extraneous crime or bad act unless it is shown beyond
a reasonable doubt to have occurred.  But
in the context of Rule 405 cross examination, not only was the State not
required to prove to the jury that the acts actually occurred, but it would
have been improper for the State to attempt to do so.  Wilson, 71 S.W.3d at 350–51.  The reason for this kind of cross examination
is to test the character witness, not to introduce extraneous acts.  Id.[6]  This question was a test of the witness’s
knowledge of the facts and circumstances of Appellant’s life.  Therefore the questions were not
impermissible on the grounds that it was not shown that Appellant was convicted
of the offenses.

            A closer question is presented on the grounds that
Appellant’s arrests were not relevant to the character trait at issue.  Appellant’s sister testified that, during
high school, Appellant did not get into any trouble, was not in any fights, and
was not violent.  The court in De
Leon v. State, 758 S.W.2d 621, 627 (Tex. App.–Houston [14th Dist.]
1988, no pet.), stated that it was not “aware of a rule that requires the
state, when cross–examining reputation witnesses, to limit its questioning to
the narrowly tailored time periods previously inquired into by Appellant on
direct examination.”  Appellant has
directed us to no such rule, and we have found none.[7]  Appellant’s sister testified that she had
known Appellant continuously and sketched a time line from high school to the
present time.  In that context, the trial
court did not abuse its discretion when it determined that the questions were a
reasonable test of her testimony. 

            Finally, Appellant argues that there was not a basis in
fact for the question asked by the State. There was not an objection on this
ground.  As the court held in Wilson,
when a party objects that there is not a factual basis for a question, “the
foundation for inquiring into the specific instances of conduct should be laid
outside the jury’s presence so that the judge will have an opportunity to rule
on the propriety of asking them.”  Id.
at 351.  Because there was no objection
to the lack of a predicate, the State was never called upon to provide
one.  Even so, Appellant essentially
concedes that he had been arrested on those two occasions.  

            Appellant has not shown that the State lacked a factual
basis for the questions and the questions were a reasonable test of the witness’s
knowledge of Appellant’s life. 
Therefore, the trial court did not err when it allowed the State to ask
the witness if she knew Appellant had been arrested.  We overrule Appellant’s sixth and seventh
issues.

 

Disposition

            Having overruled Appellant’s seven issues, we affirm
the judgment of the trial court.

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

Opinion delivered August
31, 2007.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

(DO NOT PUBLISH)











[1]
Appellant and McMorris have filed a single, joint brief.  Some of the issues, as numbered, do not apply
to one or the other appellant.  Our
numbering of the issues is sequentially as they appear in the brief. 





[2]
The officer was asked, “And when you observed the truck reduce its speed, did
the circumstances surrounding the truck and the reduction in speed in your mind
violate that statute,” to which he responded, “Yes, sir.” The officer was asked
specifically, “What is your concern when a vehicle rapidly decreases speed like
that?”  Rather than responding about the
harm to be prevented by statute, impeding the flow of traffic, he responded
that “[i]t’s just one of many indicators” and that “[i]t just got my attention.”  These answers do not provide specific and
articulable facts.





[3]
The paragraph is as follows: “Here is what happened: Thomas
joined McMorris on a quick trip to Texas to pick up a trailer which McMorris
owned, but had not seen in months, for use in McMorris’ trucking business.  The two probably shared driving, drove to a
small town near Austin, and found McMorris’ trailer. Since it was locked and
presumably empty, they did not open it. 
They backed up, attached the trailer, and headed for Mississippi.  Thomas slept along the way.”  





[4] Texas Rule of
Evidence 405 provides as follows:

 

In all cases in which evidence of a person’s character or
character trait is admissible, proof may be made by testimony as to reputation
or by testimony in the form of an opinion. In a criminal case, to be qualified
to testify at the guilt stage of trial concerning the character or character
trait of an accused, a witness must have been familiar with the reputation, or with
the underlying facts or information upon which the opinion is based, prior to
the day of the offense. In all cases where testimony is admitted under this
rule, on cross-examination inquiry is allowable into relevant specific
instances of conduct.





[5]
Appellant also argues that an arrest is not an instance of conduct and
therefore not appropriate for this type of question.  Appellant did not object on this basis and so
this complaint is not preserved for appellate consideration. Tex. R. App. P. 33.1(a)(1)(A).





[6]
Appellant’s citation to Rule of Evidence 404 is inapposite because the prior
arrests were not introduced into evidence.





[7]
There is a limitation that reputation witnesses can only be asked about
instances they might be expected to know about. 
See, e.g., United States v. Reich, 479 F.3d
179, 190 (2d Cir. 2007) (discussing United States v. Monteleone,
77 F.3d 1086, 1090 (8th Cir. 1996)).