NO.
12-06-00079-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

MELTON MCMORRIS,       §                      APPEAL
FROM THE 114TH

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §                      SMITH
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Melton
McMorris appeals his conviction for possession of a controlled substance.  In five issues, he contends that the evidence
is legally and factually insufficient to support his conviction and that the
trial court made errors in admitting evidence. 
We affirm.

 

Background








            Victor Thomas and Appellant were
traveling through Smith County, Texas on Interstate 20 in an eighteen wheel
tractor trailer.  Appellant was
driving.  Thomas owned the tractor, and
Appellant owned the trailer.  Appellant
had filed papers with the State of Mississippi the day before, registering the
tractor and the trailer in his name and listing Thomas as the owner of the
tractor.  A Smith County sheriff’s deputy
pulled the men over after he observed the driver of the truck commit traffic
violations.  After stopping the truck, he
smelled marihuana from somewhere in the vicinity of the trailer, and a dog
trained to detect illegal drugs was brought to the scene.  The dog alerted to the presence of illegal
drugs in the trailer, and the officer opened the trailer.  The police found the trailer virtually empty,
but with what looked like brand new decking on the walls of the trailer.  Upon further inspection, the police found a
secret compartment built inside the front wall of the trailer.  Inside a container behind the false wall they
found at least 1,800 pounds of marijuana and approximately 44 pounds of
cocaine.  One of the officers asked
Thomas how much the narcotics weighed. 
He said, “I can’t even begin to tell you.”

            A Smith County grand jury indicted
Appellant and Thomas for the felony offense of possession of cocaine in an
amount of more than 400 grams.  A trial
was held, and Appellant pleaded not guilty. 
The jury found Appellant guilty. 
After a separate punishment hearing, the jury assessed punishment at
fifty–five years of imprisonment.  This
appeal followed.

 

Motion to Suppress

            In his first issue,[1]
Appellant argues the initial traffic stop was illegal and that the trial court
should have granted his motion to suppress the evidence for that reason.

Standard of
Review

            We review a trial court’s ruling on
a motion to suppress in the light most favorable to the ruling.  See State v. Kelly, 204 S.W.3d
808, 818 (Tex. Crim. App. 2006).  A trial
court judge is uniquely situated to observe the demeanor and appearance of a
witness and to make factual determinations. 
See State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000); Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996).  Therefore, the trial court is the
sole trier of fact, and we afford almost total deference to the trial court’s
factual conclusions when reviewing a ruling on a motion to suppress.  See Wiede v. State, 214 S.W.3d
17, 24–25 (Tex. Crim. App. 2007).  We
afford the same deference to the trial court’s rulings on “application of law
to fact questions,” also known as “mixed questions of law and fact,” if the
resolution of those ultimate questions turns on an evaluation of credibility
and demeanor.  See Montanez v.
State, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006).  We review de novo wholly legal conclusions as
well as mixed questions of law and fact that do not turn on an evaluation of
credibility and demeanor.  Id.  The trial court’s ruling will be upheld if it
is reasonably supported by the record and is correct on any theory of law applicable
to the case.  Ross, 32
S.W.3d at 855–56; Villarreal, 935 S.W.2d at 138.

 

 Applicable Law and Analysis

            The Fourth Amendment to the United
States Constitution prohibits unreasonable searches and seizures.  U.S.
Const. amend. IV.  The Texas
Constitution contains a similar prohibition. 
See Tex. Const.
art. I, § 9.  A warrantless search is
unreasonable unless it falls within certain specific exceptions.  See Flippo v. West Virginia,
528 U.S. 11, 13, 120 S. Ct. 7, 8, 145 L. Ed. 2d 16 (1999); McGee v. State,
105 S.W.3d 609, 615 (Tex. Crim. App. 2003). 
One such exception is that a law enforcement officer may stop an
automobile if the officer observes the driver of the vehicle commit a traffic
violation.  Walter v. State,
28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (citing Whren v. United States,
517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996)). 

            In this case, the officer testified
that he observed the driver of the tractor trailer commit three traffic
offenses.  Specifically, the officer testified,
and the trial court found, that the driver drove on the shoulder, Tex. Transp. Code Ann. § 545.058
(Vernon 2006), did not maintain a safe speed, Tex.
Transp. Code Ann. § 545.363 (Vernon 2006), and did not have proper
mudflaps on the vehicle.  Tex. Transp. Code Ann. § 547.606
(Vernon 2006).  

            Appellant testified at a hearing on
the motion to suppress.  His testimony
did not contradict the officer’s testimony in a dramatic fashion, although he
did state that the photograph of the mudflap was different than he remembered
it.  He also testified that the flap, as
it was depicted in a photograph, was a violation of the statute.  Texas Transportation Code, Section 547.606
provides, inter alia, that mudflaps are to be of a type prescribed by the Texas
Department of Transportation.  The
department has promulgated rules requiring that “safety guards or flaps” be “rigid
enough to prevent slush, mud, or gravel being transmitted from the vehicle’s
rear wheels to the windshield of the following vehicle” and “not split or torn
to the extent that [they are] ineffective.” 
37 Tex. Admin. Code §
21.1(g)(7), (8) (West 2007).  The officer
testified that the torn mudflap was a concern because rocks and debris could go
through a tear and strike a vehicle.  He
also expressed concern that the flap itself, or some part of it, could come
loose and strike a vehicle.  The first
concern is sufficient to support the ruling of the trial court.  Appellant argues that the officer’s testimony
was ambiguous as to whether he was testifying about the flap on the very back
of the trailer or the back of the tractor and that he discovered the defect
only after stopping the vehicle.  These
are factual determinations, and we defer to the trial court’s resolution of
these issues.

            With respect to the failure to
maintain a safe speed, the relevant statute provides that an “operator may not
drive so slowly as to impede the normal and reasonable movement of traffic,
except when reduced speed is necessary for safe operation or in compliance with
law.” 
Tex. Transp. Code Ann. § 545.363(a).  The officer testified that he observed the
truck slow rapidly from sixty–five miles an hour to fifty miles an hour, that
there were eight or nine cars behind the vehicle, and that those vehicles had
to slow and apply their brakes.  The
State argues that the trial court should be sustained on this issue because it
was the officer’s “undisputed opinion” that this action was a violation of
Section 545.363.  This argument is
unpersuasive.  The court of criminal
appeals has held that an officer’s conclusion that the law had been violated is
not sufficient for the State to carry its burden to show an exception to the
general requirement for warrant.  See Ford
v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).  Rather, there must be specific, articulable
facts from which a court can assess whether the officer reasonably concluded
that a person actually was, had been, or soon would have been engaged in
criminal activity.  Id.

            We defer to the trial court’s
factual findings, and so we will accept the officer’s testimony that there was “traffic
that was behind him that was flowing at the same speed as him, and then he
slowed down, coming up on me, and the cars [were] having to hit their brakes,”
that the reduction in speed was “pretty rapid,” and that there were eight or
nine cars behind the vehicle.  Pursuant
to Ford, we do not credit his conclusory statements about the
statute being violated because they provide no specific or articulable facts on
which to find that the State had proven a violation of the law.[2]  The question then is whether slowing from
sixty–five miles an hour to fifty and causing eight or nine cars to brake is
impeding the normal and reasonable movement of traffic. 

            In Moreno v. State,
124 S.W.3d 339, 346–47 (Tex. App.–Corpus Christi 2003, no pet.), the court of
appeals held that a reduction of speed to twenty–five miles per hour in a forty–five
miles per hour zone which caused the medium to heavy traffic in the area to
back up while the cars behind the driver waited for the other lane of traffic
to clear was a violation of the statute. 
In Richardson v. State, 39 S.W.3d 634, 638–39 (Tex. App.–Amarillo
2000, no pet.), the court held that the statute was not violated because there
was no proof of any traffic that was impeded by a slow driver.  See also Davy v. State,
67 S.W.3d 382, 392–93 (Tex. App.–Waco 2001, no pet.).  And in United States v. Coronado,
480 F. Supp. 2d 923, 928 (W.D. Tex. 2007), a federal trial court applying Texas
law held that the government failed to show reasonable suspicion that a driver
had impeded traffic because there was no evidence of how long the officer
observed any backup of cars behind the vehicle, and no evidence that the
vehicle, which was briefly traveling twelve miles under the posted speed limit,
was impeding the normal and reasonable movement of traffic.  

            Although Coronado is
not binding authority, it is persuasive in this case.  This is not a case where the vehicle was
stopped in the road.  See, e.g., State
v. Rivenburgh, 933 S.W.2d 698, 702 (Tex. App.–San Antonio 1996, no
pet.); State v. Green, 773 S.W.2d 816, 818 (Tex. App.–San Antonio
1989, no pet.).  The relevant testimony
was that eight or nine cars had to apply their brakes when the truck
decelerated from sixty–five miles an hour to fifty.  In some instances this could impede the “normal
and reasonable movement of traffic,” but we do not think the transportation
code is to be so narrowly construed that a driver breaks the law every time he
decelerates and causes those behind him to brake.  Application of brakes and overpassing of
slower traffic are part of the normal flow of traffic.  There was no testimony that traffic was
backed up or stopped, or that the other drivers were impeded beyond the
ordinary and reasonable flow of traffic. 
The officer’s conclusory statements that the driver violated the law
cannot be a basis to affirm the trial court’s ruling.  Crediting the facts to which the officer
testified, that the driver slowed his truck and a number of cars had to apply
their brakes, the evidence is not sufficient to show as a matter of law that
the driver impeded the normal and reasonable flow of traffic.

            Finally, the officer testified, and
the trial court found, that the truck drove onto the shoulder on two occasions,
violating Texas Transportation Code, Section 545.058.  Section 545.058 provides that a driver may
travel on an improved shoulder only in certain circumstances, none of which are
present here.  Appellant does not address
this finding.  Instead, Appellant argues
that he did not violate Section 545.060(a) of the transportation code.  

            These statutes are not the
same.  Section 545.060 provides that a
driver must drive in a single lane but may not move out of that lane if the
movement can be made safely.  By
contrast, Section 545.058 does not allow for free travel on the shoulder.  Rather, it allows a driver to drive on the
shoulder when necessary, when it can be done safely, and in one of several
enumerated instances, for example, to park or to avoid a collision.  Even if it was safe to do so, a contention
the State contests, there was no evidence that it was necessary for the driver  to drive on the shoulder and none of the
enumerated instances where shoulder driving is permissible were present.  Therefore, the officer was justified in
pulling Appellant over when he saw him drive on the shoulder.  See Tyler v. State, 161 S.W.3d
745, 750 (Tex. App.–Fort Worth 2005, no pet.).

            The trial court’s findings that the
officer observed the driver of the eighteen wheeler operate the vehicle on the
shoulder and without the proper flaps are supported by the record.  The trial court’s legal conclusions that
these were violations of the transportation code and that a traffic stop was
justified are correct.  Therefore, we
overrule Appellant’s first issue.

 

Sufficiency of the
Evidence

            In his second and third issues,
Appellant argues that the evidence is legally and factually insufficient to
support the verdict.  Specifically, he
contends that there was insufficient evidence to show that he knowingly or
intentionally possessed the cocaine found in the trailer.

Standard of
Review

            The due process guarantee of the
Fourteenth Amendment requires that a conviction be supported by legally
sufficient evidence.  See Jackson
v. Virginia, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed.
2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim.
App. 2004); Willis v. State, 192 S.W.3d 585, 592 (Tex. App.–Tyler
2006, pet. ref’d).  Evidence is not
legally sufficient if, when viewing the evidence in a light most favorable to
the verdict, no rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. 
See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; see
also Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

            While legal sufficiency review is
all that is required by the U.S. Constitution, the Texas Court of Criminal
Appeals has determined that the Texas Constitution requires further review of
the factual sufficiency of the evidence. 
Clewis v. State, 922 S.W.2d 126, 129–30 (Tex. Crim. App.
1996).  We review the factual sufficiency
of the evidence to determine whether, considering all the evidence in a neutral
light, the evidence supporting the conviction is too weak to withstand scrutiny
or the great weight and preponderance of the evidence contradicts the jury’s
verdict to the extent that the verdict is clearly wrong and manifestly
unjust.  See Watson v. State,
204 S.W.3d 404, 414–15, 417 (Tex. Crim. App. 2006).

            Under either standard, our role is
that of appellate review, and the fact finder is the sole judge of the weight
and credibility of a witness’s testimony. 
Wesbrook v. State, 29 S.W.3d 103, 111–12 (Tex. Crim. App.
2000).  The fact finder may choose to
believe all, some, or none of a witness’s testimony.  Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986).

Applicable
Law

            As alleged in the indictment, the
State was required to prove that Appellant intentionally or knowingly possessed
cocaine in an amount of more than 400 grams.  Tex. Health & Safety Code Ann. §
481.115(f) (Vernon 2006); Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).  Possession means
“actual care, custody, control, or management” of an item.  Tex.
Health & Safety Code Ann. § 481.002(38) (Vernon 2006).  The evidence used to prove these elements can
be either direct or circumstantial.  Brown,
911 S.W.2d at 747.

            When the proof is circumstantial,
the State must establish that the accused’s connection to the substance was
more than just fortuitous.  Id.  Furthermore, when the accused is not in
exclusive possession of the place where the substance is found, it cannot be
concluded that the accused had knowledge of and control over the contraband
unless there are additional independent facts and circumstances that
affirmatively link the accused to the contraband.  See Poindexter v. State,
153 S.W.3d 402, 406 (Tex. Crim. App. 2005). 


            Courts have recognized as many as
seventeen nonexclusive factors that may be considered when evaluating
affirmative links.  The factors include
(1) whether the contraband was in plain view or recovered from an enclosed
place; (2) whether the accused was the owner of the premises or had the right
to possess the place where the contraband was found, or was the owner or driver
of the automobile in which the contraband was found; (3) whether the accused
was found with a large amount of cash; (4) whether the contraband was conveniently
accessible to the accused or found on the same side of the vehicle as the
accused was sitting; (5) whether the contraband was found in close proximity to
the accused; (6) whether a strong residual odor of the contraband was present;
(7) whether the accused possessed other contraband when arrested; (8) whether
paraphernalia to use the contraband was in view or found on the accused; (9)
whether the physical condition of the accused indicated recent consumption of
the contraband in question; (10) whether conduct by the accused  indicated a consciousness of guilt; (11)
whether the accused attempted to escape or flee; (12) whether the accused made
furtive gestures; (13) whether the accused had a special connection to the
contraband; (14) whether the occupants of the premises gave conflicting
statements about relevant matters; (15) whether the accused made incriminating
statements connecting himself to the contraband; (16) the quantity of the
contraband; and (17) whether the accused was observed in a suspicious place
under suspicious circumstances.  See Willis
v. State, 192 S.W.3d 585, 593 (Tex. App.–Tyler 2006, pet. ref’d) (citing
Lassaint v. State, 79 S.W.3d 736, 740–41 (Tex. App.–Corpus Christi
2002, no pet.)); see also Poindexter, 125 S.W.3d at 405, n.7. 

Analysis

            The evidence in this case did not
show that Appellant possessed the twenty kilograms of cocaine on his
person.  The evidence did show that
Appellant owned the trailer and had registered the tractor in his name.  Furthermore, Appellant unquestionably
exercised actual control over the cocaine, because he was driving the truck
pulling the trailer in which it was found. 
The question is whether the proof is sufficient to show that he knew the
cocaine was in the trailer.

            Someone had recently made
substantial renovations to the trailer, including adding new interior walls and
a well built, false interior wall that concealed a trap door and a secret compartment that had been welded to the
bottom of the trailer.  In addition to
the more than forty pounds of cocaine, the secret compartment also contained at
least 1,800 pounds of marijuana.  An
officer testified that the street value of the drugs was nearly $13
million.  There were tools that could be
used to gain access to the secret compartment through the cab of the truck as
well as though the trailer, and there were rivets in the trailer consistent
with those used to install the false wall. 
Finally, an officer found marijuana seeds and stems in the cab of the
truck, and Thomas had more than $3,000 cash on his person.  

            The evidence also showed that
Appellant was nervous, he had registered the truck and trailer the day before
in Mississippi, and the two men offered different stories when describing their
journey.  Examining the evidence in the
light most favorable to the jury’s verdict and in light of the nonexclusive
factors set forth above, we conclude that the jury could have reasonably
determined beyond a reasonable doubt that Appellant knowingly and intentionally
possessed the cocaine hidden in the trailer. 
The most persuasive factor is the sheer quantity of drugs and the
industry required to put them in the trailer. 
The sophisticated modifications to the trailer make an inference of
innocent control even more unbelievable. 
The jury was asked to believe that some person had made a secret
compartment in the trailer, placed millions of dollars of illegal drugs in it,
and then allowed Appellant and Thomas to drive off with it.  Furthermore, the lack of driving logs and the
inconsistences between the stories of Appellant and Thomas reinforce the
conclusion that Appellant knew the drugs were there.  A legitimate trucker will record his journey,
and a passenger and driver will ordinarily know where they have been or have a
reasonable explanation for why they do not. 
Lastly, when asked the weight of the contraband in the truck, Thomas
said that he could not “even begin to tell you.”  As Appellant notes, this statement was made
after the drugs were found and could, strictly speaking, be consistent with a
lack of prior knowledge of the drugs. 
But a rational jury could infer that Thomas and Appellant were working
together and that Thomas’s statement was simply a concession that there was so
much contraband that even he did not know the precise weight.  We hold that the evidence was legally
sufficient to support the jury’s verdict.

            We reach the same conclusion under a
neutral review of the evidence.  We have
reviewed the record in its entirety.  We
are mindful that our evaluation must not substantially intrude upon the jury’s
role as the sole judge of the weight and credibility of witness testimony.  See Santellan, 939
S.W.2d at 164.  We also recognize that
there is no set formula for finding an affirmative link, but rather affirmative
links are established by a consideration of a totality of the circumstances.  See Hyett v. State, 58 S.W.3d 826,
830 (Tex. App.–Houston [14th Dist.] 2001, pet. ref’d).

            Given the circumstances of this
case, we conclude that the jury was entitled to find that the evidence tending
to link Appellant to the cocaine in question was of greater consequence than
the evidence not tending to so link Appellant. 
Applying the factor approach strictly, there are factors that weigh
against the conviction.  Appellant was
not under the influence of a controlled substance and did not have the
controlled substance on his person or conveniently accessible to him.  Other than his nervousness, which the officer
testified was pronounced, there was nothing about his demeanor or actions,
i.e., he did not flee, that was consistent with a consciousness of guilt.  On appeal, Appellant offers innocent
explanations for why the two men did not offer the same history of their
journey, why a log was not kept, and how it came to be that the men were
transporting millions of dollars in contraband without knowing it.  On page 47 of the brief, in a section
captioned “Here is what happened,”[3] Appellant offers an explanation that
includes details—the two defendants had never opened the trailer, had not seen
the trailer for months, and Thomas was wrong about where they had been because
he had been asleep–derived from his testimony at the suppression hearing but
not introduced before the jury.  To the
extent that it is a hypothetical scenario against which the jury’s verdict can
be tested, the jury could have reasonably rejected the hypothesis.  

            The evidence is much more
susceptible to the conclusion that persons who have millions of dollars in
illegal contraband, and go to the trouble of fabricating a false wall in a
semitrailer, do not simply give that multimillion dollar trailer to a pair of
unwitting truck drivers.  Appellant’s
nervousness, the presence of marihuana residue in the cab, the strong odor of
marihuana in the interior of the trailer, and the amount of cash Thomas had are
all factors that weigh in favor of conviction, if not overwhelmingly.  But the evidence including Thomas’s
statement, the inference that the men were working together, the lack of an
explanation for the trip, and the sheer volume of the illegal drugs leads to
the conclusion that Appellant’s possession of the cocaine was knowing. 

            Our review of the record as a whole,
with consideration given to all of the evidence, both for and against the jury’s
finding, has not caused us to conclude that the proof of guilt is so obviously
weak or is otherwise so greatly outweighed by contrary proof as to render
Appellant’s conviction clearly wrong or manifestly unjust.  Therefore, we hold that the evidence is
factually sufficient to support the jury’s verdict.  Appellant’s second and third issues are
overruled.

 

Admission
of Evidence

            In his fourth and fifth issues,
Appellant argues that evidence that marihuana was found along with the cocaine
in the secret compartment in the trailer was inadmissible collateral misconduct
evidence, that its probative value was outweighed by its prejudicial impact,
and that the trial court should not have admitted testimony about the marihuana
or the marihuana itself.

Standard
of Review

            These issues are not preserved for
review.  To preserve a complaint for
appeal, a defendant must object, state the grounds for the objection with
sufficient specificity, and obtain an adverse ruling.  Tex. R. App. P. 33.1
(a)(1)(A); Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App.
2002).  The denial of a motion in limine
does not preserve a complaint.  Roberts
v. State, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007); Martinez v.
State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).  

            The only potential objection raising
these issues came during a pretrial discussion of the lifting of a motion in
limine preventing the State from mentioning the marihuana in its opening
statement.  Appellant’s counsel objected
to lifting the motion in limine on the grounds that the argument violated Texas
Rules of Evidence 403 and 404, the complaint raised here, and because the State
had destroyed most of the marihuana prior to trial.  The trial court overruled the objections and
allowed the State to discuss the marihuana in its opening statement.  Thereafter Appellant made objections based on
the spoliation issue, but never renewed an objection based on Rules 403 or 404
and did not object on that basis when the evidence was admitted.  Because a motion in limine does not preserve
a complaint, Appellant has not preserved this complaint for our review.

            Even if Appellant had preserved this
issue, the trial court’s implicit ruling is not in error.  We review rulings on Rules of Evidence 403
and 404 for an abuse of discretion.  See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991).  Under Rule 404(b), evidence from
the same transaction as the charged offense is admissible as contextual
evidence “to the extent that it is necessary to the jury’s understanding of the
offense.”  See McDonald v.
State, 179 S.W.3d 571, 577 (Tex. Crim. App. 2005).  Such evidence is admissible “only when the
offense would make little or no sense without also bringing in the same
transaction evidence” and when several offenses are so intermixed or connected
as to form “a single, indivisible criminal transaction, such that in narrating
the one, it is impracticable to avoid describing the other.”  Id. 

            In this instance, the cocaine and
the marihuana were part of the same transaction and were not only intermixed
and connected logically, but physically as well.  The evidence was relevant for two
reasons.  First, the jury was instructed
that they could consider whether the officer acquired probable cause to search the
vehicle during the traffic stop, and further instructed that it should acquit
if it found that the search of the vehicle was done without probable
cause.  The officer testified that he
smelled the odor of raw marihuana, a smell which he later learned emanated from
the large quantity of marihuana in the secret compartment, and a drug dog
alerted on the truck.  From the evidence,
it cannot be said whether it was the smell of marihuana or cocaine that drew
the dog’s attention, but the officer’s testimony about the obvious marihuana
smell reinforced the inferences to be drawn from the testimony about the dog
alerting on the truck.  The evidence of
the marihuana in the truck was necessary to show the officer’s probable cause
to search the truck.  

            Second, keeping evidence about the
marihuana from the jury would deprive them of an understanding of the
offense.  One of the most powerful
inferences from the evidence came from the sheer volume of the contraband and
the attendant unlikelihood that the possession of millions of dollars of
illegal drugs could be accomplished unwittingly.  There was a large quantity of cocaine, but
the additional marihuana, nearly a ton of it, was an important part of the
State’s argument that it was logical to infer that so large a load would not
fall unwittingly into Appellant’s hands. 
The trial court did not abuse its discretion when it determined that the
marihuana evidence was admissible either to show probable cause or as
contextual evidence.

            The trial court did not err when it
found that the probative value of the marihuana outweighed the prejudicial harm
caused by its admission.  The testimony
about the marihuana was crucial when it came to evaluating the propriety of the
officer’s search of the semitrailer. 
Even absent the State’s right to prove probable cause to search the
truck, since Appellant requested that the question be submitted to the jury, we
are not persuaded that any unfair prejudice accrued to Appellant from the
admission of the marihuana.  To be sure,
possession of marihuana is a crime, and possession of nearly a ton of marihuana
is a serious crime.  And, as we outlined
above, the quantity of marihuana made a conviction more likely because, when
coupled with the cocaine, it made a claim of innocent possession even more
unlikely.

            But the principal evil to be avoided
when it comes to Rule 404(b) evidence is the “forbidden inference” that the
defendant is a bad person and that he must have committed the charged offense
because he committed an uncharged act.  See,
e.g., Johnston v. State, 145 S.W.3d 215, 222 (Tex. Crim.
App. 2004); Bishop v. State, 869 S.W.2d 342, 345 (Tex. Crim. App.
1993) (“The intent of this rule is to prevent the introduction of evidence to
prove the character of a person in order to show that he acted in conformity
with that character.”).  Here, the
cocaine and the marihuana were both sealed in a single box, welded to the frame
of the trailer, and hidden behind a false wall. 
It does not seem possible that a person could exercise care, custody, or
control over one item and not the other. 
Whoever possessed the cocaine also possessed the marihuana.  The inference that Appellant is a bad person
because he possessed marihuana and therefore he must have possessed the cocaine
is the forbidden inference.  The
inference that a person is unlikely to accidentally possess millions of dollars
worth of illegal narcotics is not the forbidden inference.  We perceive no danger of a forbidden
inference, and no unfair prejudice to Appellant from the admission of the
marihuana.  We overrule Appellant’s
fourth and fifth issues.

 

Disposition

            Having overruled Appellant’s five
issues, we affirm the judgment of the trial court.

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

Opinion
delivered August 31, 2007.

Panel consisted of Worthen, C.J.,
Griffith, J., and Hoyle, J.

 

 

 

( DO NOT PUBLISH)











[1] Appellant and Thomas
have filed a single, joint brief.  Some
of the issues, as numbered, do not apply to one or the other appellant.  Our numbering of the issues is sequentially
as they appear in the brief. 





[2] The officer was asked,
“And when you observed the truck reduce its speed, did the circumstances
surrounding the truck and the reduction in speed in your mind violate that
statute,” to which he responded, “Yes, sir.” The officer was asked
specifically, “What is your concern when a vehicle rapidly decreases speed like
that?”  Rather than responding about the
harm to be prevented by statute, impeding the flow of traffic, he responded
that “[i]t’s just one of many indicators” and that “[i]t just got my attention.”  These answers do not provide specific and
articulable facts.





[3] The paragraph is as
follows: “Here is what happened: Thomas joined McMorris on a
quick trip to Texas to pick up a trailer which McMorris owned, but had not seen
in months, for use in McMorris’ trucking business.  The two probably shared driving, drove to a
small town near Austin, and found McMorris’ trailer. Since it was locked and
presumably empty, they did not open it. 
They backed up, attached the trailer, and headed for Mississippi.  Thomas slept along the way.”