NUMBER 13-01-546-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







OMAR MORENO
, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 103rd District Court


of Cameron County, Texas.






O P I N I O N



Before Justices Hinojosa, Castillo, and Chavez (1)


Opinion by Justice Castillo



 A jury convicted Omar Moreno of cocaine possession. (2) The trial court
sentenced him to ten years confinement in the Institutional Division of the Texas
Department of Criminal Justice, assessed a $1,500 fine, suspended the sentence, and
placed him on community supervision for ten years. In three issues, Moreno: 
(1) challenges the trial court's denial of his motion to suppress; (2) asserts that the
evidence used to convict him was the product of an illegal arrest; and (3) claims that
the evidence was obtained through an illegal search and seizure. We affirm. 

I. FACTUAL AND PROCEDURAL BACKGROUND


A. Introductory Facts


 On September 22, 2000, Moreno and a passenger were traveling westbound
in medium-to-heavy traffic on Alton Gloor Boulevard in Brownsville, Texas. Moreno
was driving a green 1996 Ford Taurus. A Brownsville police officer pulled Moreno
over, then called for back-up. The arresting officer testified he stopped Moreno for: 
(1) impeding traffic; (2) window tinting in excess of state regulations; and (3) a faulty
courtesy brake light. When the arresting and back-up officers approached Moreno's
car, both officers looked through the car's open windows and saw the passenger kick
a black object under the front passenger seat. In response to the arresting officer's
request, Moreno presented a recently expired driver's license. He did not produce
proof of insurance. The officer placed Moreno under arrest. The back-up officer
arrested the passenger on outstanding warrants. 

 The officers inventoried the passenger compartment of Moreno's car at the
scene. They found a black bag under the front passenger seat. When the arresting
officer asked Moreno what was in the bag, he replied, "Personal items." He refused
to consent to a search of the bag. He asked if the officers had a warrant. The officers
opened the bag. Inside they found cocaine, scales, and other drug paraphernalia. At
the police station, Moreno signed a confession admitting that the cocaine belonged to
him. 

B. Preservation of Error


 We first address the State's suggestion that Moreno waived his complaint by
stipulating to a chemical analysis of the cocaine and to the chain of custody. Moreno
filed a pre-trial motion to suppress the cocaine and his confession as the products of
an illegal detention, arrest, and search. Although it is not clear from the record, the
trial court apparently carried the suppression motion with the trial. While the record
reflects that Moreno stipulated to the analysis and chain of custody of the cocaine, he
did so subject to his suppression motion. He also objected at trial on the same basis
to admission of the stipulation into evidence. The trial court overruled Moreno's
objection and admitted the stipulation. It held a suppression hearing outside the
presence of the jury during a later break in the trial. (3) It then admitted Moreno's
confession into evidence. 

1. The Trial Court's Rulings


 No written order denying the suppression motion appears in the record. 
However, the trial court rendered the following findings of fact and conclusions of law:

 The Court finds, first, that the defendant was lawfully arrested for traffic
violations, that there was no one to take the vehicle and necessitating an
inventory, that inventory search revealed marijuana - I'm sorry, cocaine,
that the defendant was also arrested for possession of cocaine. 


We hold that these findings reflect the trial court's implicit ruling denying Moreno's
suppression motion. See Tex. R. App. P. 33.1(a)(2)(A); see also Gutierrez v. State,
36 S.W.3d 509, 511 (Tex. Crim. App. 2001). 

 Later, in the presence of the jury, Moreno reasserted his objection when the
State offered his statement into evidence. The trial court overruled the objection. 
Moreno renewed his motion to suppress after the close of all the evidence, which the
trial court also overruled. 

2. Waiver Principles


 A motion to suppress is a specialized objection to the admissibility of evidence. 
Morrison v. State, 71 S.W.3d 821, 826 (Tex. App.-Corpus Christi 2002, no pet.)
(citing Galitz v. State, 617 S.W.2d 949, 952 n. 10 (Tex. Crim. App. 1981) (op. on
reh'g)). Therefore, a suppression motion must meet the requirements of an objection. 
Morrison, 71 S.W.3d at 826 (citing Mayfield v. State, 800 S.W.2d 932, 935 (Tex.
App.-San Antonio 1990, no pet.)). It must be timely and sufficiently specific to
inform the trial court of the complaint. Morrison, 71 S.W.3d at 826 (citing Tex. R.
App. P. 33.1(a)(1)(A); Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim.
App. 1995)). The specificity requirement has a dual objective: (1) to inform the trial
court of the basis for the objection; and (2) to provide opposing counsel the
opportunity to cure the objection or supply other testimony. Morrison, 71 S.W.3d
at 826 (citing Long v. State, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990) (per
curiam); Zillender v. State, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977) (op. on
reh'g); Callahan v. State, 937 S.W.2d 553, 557 (Tex. App.-Texarkana 1996, no
pet.)). 

3. Waiver Analysis 


 The record reflects that the trial judge was fully aware of the basis on which
Moreno asserted that the cocaine and statement should be suppressed. See Morrison,
71 S.W.3d at 826. Moreno gave the trial court an opportunity to rule on the challenge
Moreno presented. See id. We find that the State was not operating at a
disadvantage. See id. There was no evidence other than the stipulation and
statement that the State could have offered to prove its case. See id. Thus, the State
could not cure the objection or supply other testimony. See id. It strikes us as an
efficient use of the court's time and scarce judicial resources to carry a suppression
motion with a jury trial, even if to do so may seem more unorthodox than carrying the
motion with a bench trial. See id. The procedure employed by the trial court in this
case should not result in waiver of appellate review of questions presented to the trial
court, argued by the parties, and ruled on by the trial court. See id. In light of
Moreno's arguments and the court's rulings, it would be fatuous for us to hold that
Moreno did not preserve his suppression issues. See id. Therefore, we hold that the
unitary proceeding in this case allowed for the preservation of error. See id. (citing
Gearing v. State, 685 S.W.2d 326, 330 (Tex. Crim. App. 1985) (op. on reh'g),
overruled on other grounds, Woods v. State, 956 S.W.2d 33, 36 n.2, 38 (Tex. Crim.
App. 1997)). We turn to the merits. 

II. BURDENS OF PROOF AND STANDARD OF REVIEW


A. The Burdens of Proof


 An accused seeking to suppress evidence on the basis of illegal police conduct
bears the burden of proof to rebut a presumption of proper police conduct. See
McGee v. State, 105 S.W.3d 609, 613 (Tex. Crim. App. 2003). The accused
satisfies the burden by proving the police acted without a warrant. Id. The burden
then shifts to the State to either produce a warrant or prove the reasonableness of the
challenged conduct. Id. If the State produces a warrant, the burden of proof again
shifts to the accused to show the invalidity of the warrant. Russell v. State,
717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986) (op. on reh'g). If the State is unable to
produce a warrant, it must prove the reasonableness of the search or seizure. Id. The
State may demonstrate reasonableness by proving probable cause. See McGee,
105 S.W.3d at 613 (noting that State meets burden in suppression hearing by proving
one of statutory exceptions to warrant requirement). The State must prove probable
cause by a preponderance of the evidence. Porter v. State, 938 S.W.2d 725, 727-28
(Tex. App.-Houston [1st Dist.] 1996, pet. ref'd). (4) 

B. The Standard of Review


 At a suppression hearing, the trial court is the sole finder of fact. Arnold v.
State, 873 S.W.2d 27, 34 (Tex. Crim. App. 1993). The trial court is free to believe
or disbelieve any or all of the evidence presented. Romero v. State, 800 S.W.2d 539,
543 (Tex. Crim. App. 1990). Thus, in reviewing a trial court's ruling on a motion to
suppress, we give almost total deference to the trial court's determination of historical
facts and application-of-law-to-fact questions that turn on credibility and demeanor. 
Perales v. State, 117 S.W.3d 434, 437 (Tex. App.-Corpus Christi 2003, no pet. h.); 
Morrison, 71 S.W.3d at 827 (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997)). We review de novo application-of-law-to-fact questions that do not turn
on credibility and demeanor. Morrison, 71 S.W.3d at 827 (citing Guzman,
955 S.W.2d at 89). When the trial court does not make explicit findings of historical
facts, we review the evidence in the light most favorable to the trial court's ruling. 
Morrison, 71 S.W.3d at 827 (citing Walter v. State, 28 S.W.3d 538, 540 (Tex. Crim.
App. 2000)). In the absence of explicit fact findings, we assume that the trial court's
ruling is based on implicit fact findings supported in the record. Perales, 117 S.W.3d
at 437; see Carmouche v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000)
(recognizing implicit fact findings). We then review de novo whether the facts,
express or implied, are sufficient to provide legal justification for admitting the
complained-of evidence. See Morrison, 71 S.W.3d at 827 (citing Garcia v. State,
43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). 

 We uphold a trial court's ruling on a suppression motion if it is reasonably
supported by the record and is correct on any theory of law applicable to the case.
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Perales,
117 S.W.3d at 438. This is true even if the decision is correct for reasons different
from those espoused by the trial court. Romero, 800 S.W.2d at 543. 

 III. ANALYSIS


A. Investigative Detention


1. The Evidence


 The arresting officer testified as follows:

 A. First thing that caught my attention was I noticed that
traffic was a little bit backed up on Alton Gloor, and you have two lanes
of traffic, both going west bound, which the lanes were there. And the
right hand lane, it was kind of backed up and was a lot of congestion, so
when I looked to see what was causing the congestion, there was the
green Ford Taurus that was going about 25 miles an hour on Alton Gloor
Boulevard. 


 Q. And there was traffic backed up behind him?


 A. Yes, sir.


 Q. Did you notice that traffic having to do anything in regards
to that vehicle?


 A. The traffic, they had to go over into the left hand lane of
traffic, which is also west bound, and go around it. And that was kind
of difficult because of the amount of traffic that there was at the time in
both lanes. 


 Q. When you say they had to go around it, were they making
normal passes, or was traffic backing up? 


 A. Traffic was backing up. They had to wait for an opening in
the traffic to get around it. 


 Q. Okay. Did you get any closer to that vehicle?


 A. Yes, sir, I got right behind the vehicle. 


 Q. Did you notice anything when you got right behind the
vehicle?


 A. I noticed the window tint on the vehicle was extremely dark. 
Also I noticed when I got behind the vehicle, the driver of it would be,
applied the brakes, I could tell that two bottom brake lights came on. 
The vehicle also has the top brake light on the, I guess, above the back
glass, and it didn't activate. So that vehicle, that light was out. 


 Q. All right. Now, when you saw what you have described
here, do any of those conditions violate the laws of Texas?


 A. Yes, sir, the window tint, we do have a regulation,
35 percent on the window tinting. 


 Q. And are you trained to recognize that?


 A. Yes, sir, we recognize it by sight, and we also have tint
meters that normally we would have issued to us to measure the amount
of window tint. 


 Q. And have you looked into tint before as far as - -


 A. Yes, sir.


 Q. - - checking out on citations?


 A. Yes, sir. 


 Q. What about the 25 miles an hour, is it itself a violation?


 A. No, sir, going 25 miles an hour is not a violation. However,
if you are impeding traffic, then that becomes a violation. 


* * *



 Q. What is the speed limit there?


 A. I believe it's 45 miles an hour, sir.


 Q. Okay, so this vehicle is traveling 25?


 A. Yes, sir. 


 Outside the presence of the jury, Moreno testified that the location was a
construction zone where the speed limit was 35 miles per hour. He also said he had
just passed through a school zone and was traveling about 30 miles per hour. The
passenger corroborated Moreno's testimony. The car's window tint, Moreno testified,
was the same as it had been straight from the car dealership. 

 The arresting officer admitted he did not have a tint meter with him. Thus, he
did not determine if the tint actually exceeded that permitted by law. The officer
agreed that both of Moreno's brake lights were operating. He conceded that an
inoperable courtesy brake light does not violate the law. 

2. The Law of Investigative Detention


 Stopping an automobile and detaining its occupants is a "seizure" within the
meaning of the Fourth Amendment. Morrison, 71 S.W.3d at 827 (and cited cases). 
A peace officer's decision to stop an automobile is reasonable under the Fourth
Amendment when the officer has probable cause to believe the driver committed a
traffic offense. Id. An officer's observation of an actual violation of the traffic laws
gives probable cause for a traffic stop. Id. The officer is free to enforce the law and
detain the person for that violation. Morrison, 71 S.W.3d at 827 (and cited cases). 
Therefore, a violation of a traffic law in an officer's presence is sufficient authority for
an initial stop of a vehicle. Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 1977); 
Morrison, 71 S.W.3d at 827 (and cited cases). If the traffic stop was illegal, however,
the trial court must exclude evidence obtained as a result of that stop. Tex. Code
Crim. Proc. Ann. art. 38.23 (Vernon 1979); Richardson v. State, 39 S.W.3d 634, 638
(Tex. App.-Amarillo 2000, no pet.) (citing Mapp v. Ohio, 367 U.S. 643, 655 (1961)).

 3. Review of the Trial Court's Application of the Law of


Investigative Detention to the Facts



 It is undisputed that the Brownsville police officers did not have a warrant to
arrest Moreno or search his car. Thus, it was the State's burden at the suppression
hearing to show by a preponderance of the evidence that the arresting officer had at
least a reasonable suspicion that Moreno either had committed an offense or was
about to do so before he stopped Moreno. See McGee, 105 S.W.3d at 613; see also
Russell, 717 S.W.2d at 9-10; Richardson, 39 S.W.3d at 637. Giving almost total
deference to the trial court in determining the historical facts, we believe those facts
to be that the officer observed Moreno's car traveling 25 miles per hour in a 45-miles-per-hour zone. See Perales, 117 S.W.3d at 437; see also Morrison, 71 S.W.3d
at 827-28. The officer also observed that the medium-to-heavy traffic in the area had
backed up while the cars behind Moreno's car waited for the other lane of traffic to
clear so they could go around him. 

 The question then becomes whether these facts, when viewed de novo, are
sufficient to establish a violation of the law. See Morrison, 71 S.W.3d at 828. The
relevant statute is section 545.363(a) of the transportation code:

 An operator may not drive so slowly as to impede the normal and
reasonable movement of traffic, except when reduced speed is necessary
for safe operation or in compliance with the law.

 

Tex. Transp. Code Ann. § 545.363(a) (Vernon 1999); Richardson, 39 S.W.3d at 638. 
 In Richardson, testimony at the suppression hearing and a videotape of the
traffic stop established "that there was little or no traffic on the road for appellant to
impede and what traffic there was, had no difficulty in passing." Richardson,
39 S.W.3d at 639. The arresting officer admitted that the accused would not have
impeded traffic if he had been traveling at 10 miles per hour under the speed limit. Id. 
However, the officer testified, the accused was traveling at a speed of 45 miles per
hour in a 65-miles-per-hour zone, which did impede traffic. Id. The accused
introduced records of the Texas Department of Transportation that proved the area
was a construction zone where the speed limit was 55 miles per hour. Id. The
Amarillo Court of Appeals held that the evidence did not present "a case in which the
resolution of conflicting evidence based upon an evaluation of credibility and demeanor
[was] necessary," since even the officer testified that traveling 10 miles per hour under
the speed limit would not impede traffic. Id. Therefore, the court held,
section 545.363(a) did not support the officer's investigatory stop of the accused. Id.
(citing Tex. Transp. Code Ann. § 545.363(a) (Vernon 1999)).

 In the absence of similar evidence in this case showing the actual speed limit, 
the trial court's resolution of conflicting evidence based on an evaluation of the relative
credibility and demeanor of the witnesses was necessary. See Richardson, 39 S.W.3d
at 639. We defer to the trial court's resolution of conflicting evidence of the speed
limit. See Perales, 117 S.W.3d at 437; see also Morrison, 71 S.W.3d at 827. 
Viewing the evidence in the light most favorable to the trial court's denial of Moreno's
suppression motion, we find that section 545.363(a) supported the officer's
investigatory stop of Moreno. See Tex. Transp. Code Ann. § 545.363(a)
(Vernon 1999); see also Morrison, 71 S.W.3d at 827. We find that the State met its
burden and proved by a preponderance of the evidence probable cause to detain
Moreno. See McGee, 105 S.W.3d at 613; see also Porter, 938 S.W.2d at 727-28. 
Accordingly, we do not reach whether the officer's other stated reasons justified an
investigatory detention of Moreno. See Tex. R. App. P. 47.1. We find that the trial
court's implicit ruling that the officers had probable cause to detain Moreno is
reasonably supported by the record and is correct on the theory that the arresting
officer observed Moreno impeding traffic. See Villarreal, 935 S.W.2d at 138; see also
Perales, 117 S.W.3d at 438. Accordingly, we hold that the cocaine and Moreno's
confession were not the products of an illegal detention. See Richardson, 39 S.W.3d
at 638. We overrule Moreno's first issue to the extent it asserts an illegal detention. 

 B. Warrantless Arrest


1. The Evidence


 Moreno also contested whether his license had expired. He testified he told the
officer he had sent in a renewal of his driver's license, which had expired on
September 10, 2000, a few days before. He argued that the officers should have
performed a license check before arresting him, which would have verified that his
license had been renewed. However, the temporary license Moreno introduced in
support of his suppression motion showed that it was valid beginning October 4,
2000, after the date of his arrest on September 22, 2000. 

 Also disputing the officer's testimony that Moreno could not produce proof of
insurance, Moreno testified the officer refused to permit him to retrieve his proof of
insurance from the glove box. The passenger confirmed that Moreno tried to get into
the glove box but was stopped by the officer. Further, Moreno introduced an
automobile insurance binder for a 1996 Taurus that showed insurance in effect on
September 22, 2000. However, the trial court ruled: 

 Gentlemen, first, before I forget it, I think the defense - - the State's
objection has gone to it, but I am not real sure. The reason the Court has
not received the Exhibit 4 at this time is when the Court reviewed that,
it appears to be, number one, from a relevance standpoint, it's a
questionable relevance because the relevant thing would be whether he
had it at the time. But secondly, it appears to be a, what I would call a
bill from the company saying this is what we are going to do, it does not
appear to be any proof of that in fact he was insured, which is what I am
understanding it's being offered to show that well, maybe he didn't have
it or whatever, but he really was insured, I am not sure it provides any
proof that he was in fact insured at that time because it just simply, it
proves that some time in the past he apparently had insurance and they
were providing a renewal some couple of months earlier, but it does not
show that he ever in fact followed through and did whatever you have
to do to pay for it and get the insurance in place. So it's one, not a
policy of insurance, and two, it's certainly not proof of insurance on the
proper form that we are required to carry around in our car. I'll still keep
the issue open depending on how the evidence materializes later on. 


 Finally, Moreno introduced evidence that his citations for driving without a
license and not having proof of insurance were dismissed for want of prosecution. He
argued that the State was collaterally estopped from relying on proof of those
violations to justify the arrest and search. 

2. The Law of Warrantless Arrests


 After initiating a valid investigative detention for a traffic offense, a peace
officer may then make an arrest if the officer discovers another offense during the
investigation. Taylor v. State, 421 S.W.2d 403, 407 (Tex. Crim. App. 1967) (op. on
reh'g); Perales, 117 S.W.3d at 439. Further, a peace officer may arrest an offender
without a warrant for any offense committed in the officer's presence or view. Tex.
Code Crim. Proc. Ann. art. 14.01(b) (Vernon 1977); Pierce v. State, 32 S.W.3d 247,
248 n.1 (Tex. Crim. App. 2000). To justify a warrantless arrest, the officer need not
determine whether an offense has in fact been committed. Carlock v. State,
609 S.W.2d 787, 790 (Tex. Crim. App. [Panel. Op.] 1980). Rather, the State need
only prove probable cause. Id. Probable cause exists when the facts and
circumstances within the officer's knowledge and of which the officer had reasonably
trustworthy information are sufficient to warrant a prudent person to believe that the
arrested person had committed or was committing an offense. Britton v. State,
578 S.W.2d 685, 689 (Tex. Crim. App. 1979) (op. on reh'g). We scrutinize the
objective facts known to the officer at the time of the arrest, not the
officer's subjective conclusions, to determine probable cause. Amores v. State,
816 S.W.2d 407, 415 (Tex. Crim. App. 1991). 

3. Review of the Trial Court's Application of the Law of


Warrantless Arrests to the Facts



 It was the State's burden at the suppression hearing to show by a
preponderance of the evidence that the arresting officer had probable cause to arrest
Moreno. See McGee, 105 S.W.3d at 613; see also Russell, 717 S.W.2d at 9-10;
Richardson, 39 S.W.3d at 637. Giving almost total deference to the trial court in
determining the historical facts, we find those facts to be that Moreno presented an
expired driver's license to the officer and was unable to produce proof of insurance. 
See Perales, 117 S.W.3d at 437; see also Morrison, 71 S.W.3d at 827-28. It was not
necessary for the State to prove that Moreno's license actually had expired or that he
had no insurance. See Carlock, 609 S.W.2d at 790. It is enough that the State
presented to the trial court objective facts known to the officer, when viewed de novo,
that are sufficient to establish probable cause that Moreno's license was expired and
that he had no proof of insurance. See Amores, 816 S.W.2d at 415; see also
Morrison, 71 S.W.3d at 828. Moreno's arrest was valid because it was based on his
failure to produce either a current driver's license or proof of insurance on request. 
See Tex. Transp. Code Ann. §§521.025, 601.051(1) (Vernon 1999); see also
Armitage v. State, 637 S.W.2d 936, 939 (Tex. Crim. App. [Panel Op.] 1982). We
find that the State met its burden and proved by a preponderance of the evidence
probable cause to arrest Moreno. See McGee, 105 S.W.3d at 613; see also Porter,
938 S.W.2d at 727-28. We also find that the trial court's explicit ruling that the
officers had probable cause to arrest Moreno for a traffic violation is reasonably
supported by the record and is correct on the theory that Moreno presented an expired
driver's license to the arresting officer and did not produce proof of insurance. See
Villarreal , 935 S.W.2d at 138; Perales, 117 S.W.3d at 438. Accordingly, we hold
that the cocaine and Moreno's confession were not the products of an illegal arrest. 
See Richardson, 39 S.W.3d at 638. We overrule Moreno's second issue and his first
issue to the extent it asserts an illegal arrest. 

 C. Warrantless Seizure


1. The Testimony


 Moreno also disputed that impoundment of his car was necessary. The
arresting officer agreed that a check of the outstanding warrants on the passenger
showed he was not the person named in the warrants, and the passenger was
released. The passenger testified and disputed the officers' testimony that he did not
have a driver's license with him that day. Moreno introduced evidence of the
passenger's valid driver's license on that date. He argued that the officers were
required to release the car to the passenger rather than impound it. He concluded that
the resulting inventory search was therefore illegal. 

 We need not decide these issues. We find that the officers' search of the black
bag they observed the passenger kick under the front seat was a search incident to a
lawful custodial arrest. See Williams v. State, 726 S.W.2d 99, 100 (Tex. Crim.
App. 1986) (holding that police officer had probable cause to arrest defendant after
observing traffic violation; search of sack in pickup was justified as search incident to
arrest); see also Villarreal, 935 S.W.2d at 138 (holding that trial court's ruling may be
upheld on any theory applicable to case); Romero, 800 S.W.2d at 543 (noting that trial
court's ruling may be upheld on any theory applicable to case even if decision is
correct for reasons different from those espoused by trial court). 

2. The Law of Search Incident to Arrest


 The privacy interests of a person who has been lawfully arrested must yield, for
a reasonable time and to a reasonable extent, to permit the police to search for
weapons, means of escape, and evidence. Oles v. State, 993 S.W.2d 103, 107 (Tex.
Crim. App. 1999). Specifically, once an officer has probable cause to arrest for a
traffic violation, the officer may search the passenger compartment of the vehicle and
any containers found there as a search incident to that arrest. Welch v. State,
93 S.W.3d 50, 59 (Tex. Crim. App. 2002) (Womack, J., concurring); State v. Ballard,
987 S.W.2d 889, 892 (Tex. Crim. App. 1999); Williams, 726 S.W.2d at 100. 

3. De Novo Application of the Law of


Search Incident to Arrest



 We find that the officer's arrest of Moreno for driving with an expired license
and no proof of insurance authorized a search of the black bag under the front
passenger seat as a search incident to Moreno's arrest. See Welch, 93 S.W.3d at 59;
Ballard, 987 S.W.2d at 892; Williams, 726 S.W.2d at 100. Accordingly, we hold that
the cocaine and Moreno's confession were not the products of an illegal search. See
Ballard, 987 S.W.2d at 892. We overrule Moreno's third issue and his first issue to
the extent it asserts an illegal search and seizure. 

IV. CONCLUSION


 Having overruled each of Moreno's issues, we affirm the judgment of the trial
court. 

 ERRLINDA CASTILLO

 Justice

Publish.

Tex. R. App. P. 47.2(b).


Opinion delivered and filed this

the 18th day of December, 2003.

1. The assignment of retired Justice Melchor Chavez to this Court by the Supreme Court of Texas
pursuant to section 74.003 of the government code expired on August 31, 2003. See Tex. Gov't Code
Ann. § 74.003 (Vernon Supp. 2004). Accordingly, Justice Chavez did not participate in this decision. 
2. See Tex. Health & Safety Code Ann. § 481.112 (Vernon 2002). 
3. At the same time, the trial court conducted a hearing on the voluntariness of Moreno's
confession on grounds unrelated to this appeal. Moreno does not challenge on appeal the trial court's
ruling that his statement was voluntary. 
4. Similarly, the State's standard for proving the voluntariness of an accused's confession is
preponderance of the evidence. Zayas v. State, 972 S.W.2d 779, 791 (Tex. App.-Corpus Christi 1998,
pet. ref'd). The State's standard for proving consent to search is clear and convincing evidence. State
v. Ibarra, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997); Henson v. State, 915 S.W.2d 186, 193 (Tex.
App.-Corpus Christi 1996, no pet.).