ACCEPTED
13-14-00524-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/31/2015 5:35:18 PM
CECILE FOY GSANGER
CLERK

**No. 13-14-524-CR**

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/31/2015 5:35:18 PM
CECILE FOY GSANGER
Clerk

# KATHARINA CASTELLANOS, APPELLANT,

## v.

# THE STATE OF TEXAS, APPELLEE.

FILED
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI - EDINBURG

**073115**

**CECILE FOY GSANGER, CLERK**
**BY  CCoronado**

ON APPEAL FROM COUNTY COURT AT LAW # 1
NUECES COUNTY, TEXAS

## BRIEF FOR THE STATE

Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

Attorney for Appellee

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES .................................................................... iii

STATEMENT OF FACTS .....................................................................1

    **I. The Charges.**.................................................................................1
    **II. Motion to Suppress.**...................................................................1
    **III. Trial on Guilt-Innocence.**.........................................................3
    **IV. Punishment and Sentencing.**....................................................6
    **V. Motion for New Trial.**................................................................6

SUMMARY OF THE ARGUMENT ........................................................7

ARGUMENT .........................................................................................8

**Reply Point No. 1**
**(Responsive to Appellant's First and Second Issues on Appeal)**
**Castellanos failed to show that the trial court abused its discretion in**
**denying her motion to suppress, or in allowing evidence of the blood test**
**in spite of her claim that the conditions of the blood draw were not**
**sanitary.**...............................................................................................8

    **I. Waiver.**........................................................................................8
    **II. Standard of Review.**.................................................................10
    **III. Consent as an Exception to Statute.**.........................................11
    **IV. Burden to Prove Statutory Compliance.**..................................12
    **V. Sanitary Environment.**.............................................................13

**Reply Point No. 2**
**(Responsive to Appellant's Third Issue on Appeal)**
**Castellanos failed to show that her trial attorney rendered ineffective**
**assistance of counsel by neglecting to preserve her objection to the blood**
**draw.**..................................................................................................15

**Reply Point No. 3**
**(Responsive to Appellant's Fourth Issue on Appeal)**
**The trial court did not err in punishing Castellanos for a Class A**
**Misdemeanor without a jury finding that her blood alcohol level**
**exceeded 0.15.** ................................................................................. 17

     **I. Element or Punishment Enhancement?** ................................... 17
     **II. Other Considerations.** ............................................................. 20
     **III. Constitutional Requirements.** .............................................. 22

PRAYER ............................................................................................... 23

RULE 9.4 (i) CERTIFICATION ......................................................... 24

CERTIFICATE OF SERVICE ............................................................ 24

# INDEX OF AUTHORITIES

## Cases

*Amador v. State,* 275 S.W.3d 872 (Tex. Crim. App. 2009). .................. 10, 13

*Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348 (2000). ................ 22

*Beeman v. State,* 86 S.W.3d 613 (Tex. Crim. App. 2002). ......................... 12

*Bennett v. State,* 723 S.W.2d 359 (Tex. App.-Fort Worth 1987, no pet.). ... 11

*Ex parte Boyd,* 58 S.W.3d 134 (Tex. Crim. App. 2001). ........................... 22

*Brooks v. State,* 957 S.W.2d 30 (Tex. Crim. App. 1997). ........................... 18

*Calton v. State,* 176 S.W.3d 231 (Tex. Crim. App. 2005). ......................... 18

*Galitz v. State,* 617 S.W.2d 949 (Tex.Crim.App.1981)..................................8

*Gutierrez v. State,* 221 SW3d 680 (Tex. Crim. App. 2007). ....................... 11

*Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997). ......................... 10

*Jackson v. State,* 973 S.W.2d 954 (Tex. Crim. App. 1998). ....................... 15

*State v. Johnston,* 336 S.W.3d 649 (Tex. Crim. App. 2011). ...................... 14

*Kimmelman v. Morrison,* 477 U.S. 365, 106 S. Ct. 2574 (1986). .......... 15, 16

*King v. State,* 05-10-00610-CR, 2012 WL 414801 (Tex. App.—Dallas Feb. 10, 2012, pet. ref'd) (not designated for publication). .................................. 11

*Long v. State,* 800 S.W.2d 545 (Tex. Crim. App. 1990). ...............................9

*Moreno v. State,* 124 S.W.3d 339 (Tex. App.—Corpus Christi 2003, no pet.). ............................................................................................................ 8, 9

*Morrison v. State,* 71 S.W.3d 821(Tex. App.-Corpus Christi 2002, no pet.). ............................................................................................................ 8, 9

*Navarro v. State*, --- S.W.3d ---, No. 14-13-00706-CR, 2015 WL 4103565 (Tex. App.—Houston [14th Dist.] July 7, 2015, no. pet. h.) (not yet published) ........................................................................ 18, 19

*State v. Neesley,* 239 S.W.3d 780 (Tex. Crim. App. 2007). ........................... 12

*Pham v. State,* 175 S.W.3d 767 (Tex. Crim. App. 2005). ............................ 13

*Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733 (2011). .............................. 16

*Ramos v. State*, 245 SW3d 410 (Tex. Crim. App. 2008). ............................ 10

*Roberson v. State,* 852 S.W.2d 508 (Tex. Crim. App. 1993). ....................... 15

*State v. Robinson*, 334 S.W.3d 776 (Tex. Crim. App. 2011). ............... 11 - 13

*Schmerber v. California*, 384 U.S. 757 (1966). ........................................ 14

*Sisk v. State,* 131 S.W.3d 492 (Tex. Crim. App. 2004). .............................. 22

*Stairhime v. State*, --- S.W.3d ---, PD-1071-14, 2015 WL 3988925 (Tex. Crim. App. July 1, 2015) (not yet published). ......................................... 9, 10

*Subrias v. State,* 278 S.W.3d 406 (Tex. App.-San Antonio 2008, pet. ref'd). ....................................................................................... 11

*Thomas v. State,* 408 S.W.3d 877 (Tex. Crim. App. 2013). ......................... 10

*Ex parte White*, 400 S.W.3d 92 (Tex. Crim. App. 2013). ............................ 22

*Yazdchi v. State*, 428 S.W.3d 831 (Tex. Crim. App. 2014). ......................... 20

**Statutes & Rules**

Tex. Penal Code § 1.07. ......................................................................... 17

Tex. Penal Code § 19.02. ........................................................................ 21

Tex. Penal Code § 20.04. ........................................................................ 22

iv

Tex. Penal Code § 49.01. ................................................................ 19

Tex. Penal Code § 49.04. ................................................................ 17

Tex. Penal Code §49.045. ............................................................... 21

Tex. Penal Code § 49.07. ................................................................ 21

Tex. Penal Code § 49.08. ................................................................ 21

Tex. Code Crim. Proc. art. 37.07. ................................................... 23

Tex. Transp. Code Ann. § 724.012. ................................................ 11

Tex. Transp. Code Ann. § 724.017. ................................................ 14

Tex. R. App. P. 33.1. ........................................................................8

http://www.merriam-webster.com/dictionary/sanitary ................................ 14

NO. 13-14-524-CR

| | | |
|---|---|---|
| KATHARINA CASTELLANOS, | § | COURT OF APPEALS |
| Appellant, | § | |
| | § | |
| V. | § | FOR THE THIRTEENTH |
| | § | |
| THE STATE OF TEXAS, | § | |
| Appellee. | § | DISTRICT OF TEXAS |

## BRIEF FOR THE STATE

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT OF FACTS

### I. The Charges.

Katharina Castellanos was charged by information with Driving While Intoxicated, and with the additional allegation that "at the time of performing an analysis of a specimen of the defendant's BLOOD, the analysis showed an alcohol concentration level of 0.15 or more." (CR p. 6)

### II. Motion to Suppress.

In her Motion to Suppress, Castellanos complained that she was "illegally detained," that a subsequent field sobriety test was not properly conducted, that her blood was drawn without her consent, that the initial stop and detention was illegal, and that the blood test, among other things, was "a direct result of the violations of Defendant's rights under the Fourth Amendment to the Constitution of the United States and the Statutes and

Constitution of the State of Texas," yet she said nothing about any error in the procedure by which her blood was drawn. (CR p. 26)

At the beginning of the hearing on the motion to suppress, Castellanos represented to the trial court that the only issues she was raising were propriety of the stop, the validity of her consent, and whether the standard field sobriety tests were done properly. (RR vol. 2, p. 5)

Officer Allan Miller testified for the State that Castellanos voluntarily offered or consented to give a blood sample. (RR vol. 2, pp. 20, 21) On cross-examination, Officer Miller testified that Castellanos' blood was drawn in a big chair, in a hallway at the hospital, where blood was routinely drawn, but that he did not know whether it was routinely sterilized. (RR vol. 2, pp. 51-52) On re-direct, Officer Miller testified that he had never observed anything unsanitary in the hallway where the blood was drawn. (RR vol. 2, p. 59) On re-cross, Officer Miller testified that he saw patients passing through the hall in question and it was possible that there were sick people there. (RR vol. 2, p. 60)

Officer Ronald Rayos testified for the State that the hallway in question is a sanitary place, based on his experience in taking people there for blood draws for some seven years. (RR vol. 2, p. 64) On cross-examination, Officer Rayos explained that the blood draw was not done in a

waiting area, but in a secured area behind the entry way, that it was in effect a separate room with only the blood draw participants present, and that this was not a place where people were just walking by.  (RR vol. 2, pp. 68-70)

Katharine  Castellanos testified for the defense that, in her opinion, the area in which her blood was drawn was not maintained in a sanitary condition.  (RR vol. 2, p. 90)

After both the State and defense rested at the suppression hearing, the trial court indicated that it did not need argument, but made no ruling and merely asked for the defense attorney's e-mail before ending the proceedings.  (RR vol. 2, pp. 102-03)

An initialed docket sheet entry immediately below a notation concerning the pre-trial hearing indicates that the motion to suppress was denied.  (CR p. 89)

### III. Trial on Guilt-Innocence.

At trial, the trial court instructed the prosecutor not to read the enhancement portion of the information, which she did not, reading only that portion charging Castellanos with a DWI.  (RR vol. 3, p. 66-67)

Officer Allan Miller testified for the State that Castellanos signed a consent to draw her blood.  (RR vol. 3, pp. 88-89)  Officer Miller testified that he saw a phlebotomist draw Castellanos' blood and that it appeared to

3

be a clean environment, and that he used a swab to clean the area where the blood was drawn. (RR vol. 3, p. 90) On cross-examination, Officer Miller confirmed that Castellanos consented to giving blood (RR vol. 3, p. 125), that he took Castellanos to a secure area for the blood draw where he did not believe that regular patients were allowed without escort (RR vol. 3, pp. 128-29), and that he took Castellanos to a blood draw chair in the hallway where people were going back and forth. (RR vol. 3, pp. 129-30) Officer Miller admitted that he did not observe anyone clean the chair in which Castellanos' blood was drawn, nor did he know how long it had been since another patient had been in that chair (RR vol. 3, pp. 135-36), and that he could not testify to the sanitary conditions of the hospital. (RR vol. 3, pp. 136-37) On redirect, Officer Miller testified that, to his knowledge, the conditions in the hospital were not unsanitary. (RR vol. 3, pp. 137, 139)

When DPS Forensic Scientist Emily Bonvino testified for the State concerning her testing of the blood evidence and the State offered the blood kit into evidence, Castellanos objected only to the chain of custody. (RR vol. 3, p. 195) When the State then offered Bonvino's report into evidence, which contained the critical test result placing Castellanos at an alcohol concentration of 0.198, her attorney announced, "We have no objection at this time." (RR vol. 3, p. 199; SX # 5)

After the State rested its case, Castellanos objected that it was error not to read the enhancement to the jury and that this resulted in reducing the present case to a Class B Misdemeanor rather than the enhanced Class A Misdemeanor. (RR vol. 4, pp. 54-56) However, without making a specific ruling on the objection, the trial court asked the defense to proceed, and it did by calling Castellanos to testify. (RR vol. 4, p. 56)

Katharina Castellanos testified that the chair was dirty (RR vol. 4, p. 76), that it had a sticky residue on it, and that there were patients and families walking through the hall where her blood was drawn. (RR vol. 4, pp. 78-79)

The charge of the court at guilt-innocence defined the methods of committing DWI, but said nothing about the enhancement for a blood analysis showing an alcohol concentration of 0.15. The charge also instructed the jury in Paragraph 4 concerning the statutory requirement that the specimen be taken in a sanitary place, and in Paragraph 6 to disregard the blood evidence if the sample was not taken in a sanitary place. (CR p. 65)

Castellanos' attorney announced that he had no objections to the jury charge. (RR vol. 4, p. 113)

## IV. Punishment and Sentencing.

At the punishment phase of trial, Castellanos attorney again argued that her conviction was for a Class B Misdemeanor because the enhancement had not been submitted to the jury at guilt-innocence. (RR vol. 5, p. 12) However, the trial court found that Castellanos had been convicted of a Class A Misdemeanor, without further objection from the defense. (RR vol. 5, p. 16) Accordingly, Castellanos having elected to have punishment assessed by the court, the trial judge assessed punishment at a 365-day jail term and a $1,000 fine, probating the jail sentence for twelve months. (CR p. 71)

## V. Motion for New Trial.

Castellanos filed a motion for new trial complaining that the trial court erred in failing to read the enhancement allegation to the jury prior to her plea, and that the charge did not require the jury to find her guilty of that enhancement, such that the trial court erred in finding her guilty of the enhanced Class A Misdemeanor DWI and punishing her at a higher level than was allowed for a Class B. (CR p. 76)

The trial court denied the motion for new trial by written order. (CR p. 80)

## SUMMARY OF THE ARGUMENT

*First and Second Issues* – Castellanos waived error by failing to challenge the conditions of the blood draw in her motion to suppress and by announcing that she had "no objection" to the blood evidence at trial. Alternatively, the trial court acted within its discretion in finding that Castellanos failed to prove that the blood was not drawn in a sanitary place.

*Third Issue* – Because Castellanos failed to prove the merits of her motion to suppress, she failed to prove that her trial attorney was ineffective for neglecting to preserve this complaint for appeal.

*Fourth Issue* – The statutory provision for enhancement of a DWI based on a 0.15 alcohol concentration should be interpreted to be a punishment enhancement rather than an element of a separate DWI offense.

## ARGUMENT

### Reply Point No. 1
### (Responsive to Appellant's First and Second Issues on Appeal)
**Castellanos failed to show that the trial court abused its discretion in denying her motion to suppress, or in allowing evidence of the blood test in spite of her claim that the conditions of the blood draw were not sanitary.**

Castellanos complains by these issues that the State failed to prove that her blood was drawn under sanitary conditions, in conformity with the Implied Consent / Mandatory Draw Statute.

### I. Waiver.

A motion to suppress is a specialized objection to the admissibility of evidence, such that it must meet the requirements of an objection. *Moreno v. State*, 124 S.W.3d 339, 343 (Tex. App.—Corpus Christi 2003, no pet.); *Morrison v. State,* 71 S.W.3d 821, 826 (Tex. App.-Corpus Christi 2002, no pet.) (citing *Galitz v. State,* 617 S.W.2d 949, 952 n. 10 (Tex.Crim.App.1981) (op. on reh'g)). Those requirements for a complaint to be presented on appeal include a timely request, objection, or motion made to the trial court, stating the grounds "with sufficient specificity to make the trial court aware of the complaint." Tex. R. App. P. 33.1(a)(1)(A); *Moreno,* 124 S.W.3d at 343; *Morrison,* 71 S.W.3d at 826. The specificity requirement has a dual objective: (1) to inform the trial court of the basis for the objection; and (2) to provide opposing counsel the opportunity to cure the objection or supply

8

other testimony. *Moreno,* 124 S.W.3d at 343; *Morrison,* 71 S.W.3d at 826 (citing *Long v. State,* 800 S.W.2d 545, 548 (Tex. Crim. App. 1990). In addition, if the objection made in the trial court differs from the complaint made on appeal, a defendant has not preserved any error for review. *Morris,* 89 SW3d at 150.

In the present case, Castellanos' motion to suppress, as well as her representations before the trial court at the hearing on that motion, failed to convey the present objection to the conditions of the blood draw. For this reason alone, she waived error.

However, she also waived error by her later announcement of "no objection" to the test results that amounted to the key evidence she earlier sought to exclude.

An affirmative statement of "no objection" will operate to waive appellate review of the denial of a motion to suppress evidence, unless the record otherwise establishes that no waiver was either intended or understood. *Stairhime v. State,* --- S.W.3d ---, PD-1071-14, 2015 WL 3988925, at *3-4 (Tex. Crim. App. July 1, 2015) (not yet published). Specifically, "if from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the 'no objection' statement to be a

waiver of the earlier-preserved error." *Id.* (quoting *Thomas v. State,* 408 S.W.3d 877, 885 (Tex. Crim. App. 2013)).

In the present case, when the State sought to present the blood test results through Bonvino's testimony and report, the defense initially made objection only to chain of custody, and eventually conceded that it had "no objection" to the evidence in question, without ever raising a complaint about the manner of the blood draw. The response of "no objection" waived any prior complaint, especially in the face of the lack of a more definitive objection and pre-trial ruling.

However, even if error had been preserved, the present complaint lacks merit.

## II. Standard of Review.

The trial court is the sole judge of the credibility of witnesses at a hearing on a motion to suppress. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A trial court's ruling on a motion to suppress is subject to review on appeal for abuse of discretion. *Amador v. State,* 275 SW3d 872, 878 (Tex. Crim. App. 2009). "[T]he trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Ramos v. State,* 245 SW3d 410, 418 (Tex. Crim. App. 2008).

In reviewing a trial court's ruling on a motion to suppress, the evidence must be reviewed in the light most favorable to the trial court's ruling. *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011); *Gutierrez v. State*, 221 SW3d 680, 687 (Tex. Crim. App. 2007). When the trial court fails to make explicit findings of fact, as in this case, the reviewing court must imply fact findings that support the trial court's ruling so long as the evidence supports those implied findings. *Gutierrez*, 221 SW3d at 687.

### III. Consent as an Exception to Statute.

Chapter 724 contemplates the taking of a blood sample without explicit consent, either through passive implied consent in which the request for a sample is not affirmatively refused, or, in limited circumstances, through a forced draw when the request is affirmatively refused. *See* Tex. Transp. Code Ann. § 724.012 (a & b).

Some authority suggests that the statutory requirements for a blood draw under Chapter 724 of the Transportation Code do not apply when the blood draw is independently authorized pursuant to the suspect's explicit consent. *See Subrias v. State,* 278 S.W.3d 406, 408 (Tex. App.-San Antonio 2008, pet. ref'd); *Bennett v. State,* 723 S.W.2d 359, 361 (Tex. App.-Fort Worth 1987, no pet.); *King v. State,* 05-10-00610-CR, 2012 WL 414801, at

11

*4 (Tex. App.—Dallas Feb. 10, 2012, pet. ref'd) (not designated for publication); *see also State v. Neesley,* 239 S.W.3d 780, 786 (Tex. Crim. App. 2007) ("No statute is needed to confer authority to obtain a specimen of breath or blood from someone who freely and expressly consents to every single draw").

The Court of Criminal Appeals has noted that "[t]he implied consent law expands on the State's search capabilities," and that "[i]t gives officers an additional weapon in their investigative arsenal," such that construing the statute to "giv[e] DWI suspects more protection than other criminal suspects [would be] an absurd result contrary to the statute's intent." *Beeman v. State,* 86 S.W.3d 613, 616 (Tex. Crim. App. 2002).

Accordingly, because Castellanos did explicitly consent to the blood draw in the present case, the statutory requirements of Chapter 724 did not apply and were not a valid ground for suppressing the results.

However, even if the statutory requirements did apply, Castellanos failed to prove that State did not comply with the statute in taking her blood.

### IV. Burden to Prove Statutory Compliance.

A defendant who alleges a violation of the Fourth Amendment has the burden of producing evidence that rebuts the presumption of proper police conduct. *State v. Robinson,* 334 S.W.3d 776, 778-79 (Tex. Crim. App.

2011); *Amador v. State,* 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Likewise, a defendant who moves for suppression under Article 38.23 due to the violation of a statute has the burden of producing evidence of a statutory violation. *Robinson*, 334 S.W.3d at 779; *Pham v. State,* 175 S.W.3d 767, 772 (Tex. Crim. App. 2005).

Specifically, the defendant must first produce evidence to prove a statutory violation of the requirements of Section 724.017 before the State is ever put to its burden to prove compliance with the blood draw requirements of the statute. *See Robinson,* 334 S.W.3d at 779 (where defendant failed to produce evidence that blood was not drawn by a qualified person, State never had the burden to prove that blood sample was drawn by a qualified person).

In the present case, at the hearing on motion to suppress, Castellanos presented nothing more than her conclusory and unsubstantiated opinion that the area in question was not maintained in a sanitary condition. This was arguably insufficient even to raise, much less conclusively prove, the issue of statutory non-compliance.

### V. Sanitary Environment.

Although the Implied Consent / Mandatory Draw provisions of the Transportation Code require, among other things, that "[t]he blood specimen

must be taken in a sanitary place," Tex. Transp. Code Ann. § 724.017 (a-1), the Code does not define "sanitary place."

The Merriam-Webster Online Dictionary defines the term "sanitary" as "of or relating to good health or protection from dirt, infection, disease, etc," and "free from dirt, infection, disease, etc." http://www.merriam-webster.com/dictionary/sanitary (last accessed July 24, 2015).

Similarly, for purposes of the Fourth Amendment "reasonableness" requirement, blood draws need not even be conducted in a hospital, clinic, or medical environment, as long as the environment was a safe place to draw blood in the sense that it did not "invite an unjustified element of personal risk of infection or pain." *State v. Johnston*, 336 S.W.3d 649, 662-63 (Tex. Crim. App. 2011) (quoting *Schmerber v. California*, 384 U.S. 757, 772 (1966)).

In the present case, Officer Rayos in particular testified that Castellanos' blood was drawn in a sanitary place and a secured area, and the trial court was well within its discretion in determining that Castellanos failed to show that the blood was not drawn in a sanitary place.

Castellanos' first and second issues on appeal should be overruled.

**Reply Point No. 2**
**(Responsive to Appellant's Third Issue on Appeal)**
Castellanos failed to show that her trial attorney rendered ineffective assistance of counsel by neglecting to preserve her objection to the blood draw.

The defendant must prove that his motion to suppress would have been granted in order to satisfy an ineffective assistance claim based on counsel's failure to file or effectively pursue such a motion. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (citing *Roberson v. State,* 852 S.W.2d 508, 510–12 (Tex. Crim. App. 1993)). Specifically, in the context of an allegedly illegal search, the Court of Criminal Appeals requires that Applicant do more than merely raise "questions about the validity of the search," but asserts that he has "the burden to develop facts and details of the search sufficient to conclude that the search was invalid." *Jackson*, 973 S.W.2d at 957.

Likewise, the Supreme Court has set forth the Applicant's burden as follows:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probabilty that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574 (1986). Moreover, in addition to a meritorious Fourth Amendment claim, the

Supreme Court requires more to prove an ineffective assistance claim, as follows:

> Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

*Kimmelman*, 477 U.S. at 382. A more recent Supreme Court case has characterized this additional requirement set forth in *Kimmelman* as proof that "no competent attorney would think a motion to suppress would have failed." *Premo v. Moore*, 562 U.S. 115, 124, 131 S. Ct. 733 (2011) (citing *Kimmelman*, 477 U.S. at 382).

In the present case, for the reasons explained above, Castellanos' underlying complaint concerning the blood draw was meritless, and thus may not serve as a valid basis for a claim of ineffective assistance of counsel.

Castellanos' third issue on appeal should be overruled.

**(Responsive to Appellant's Fourth Issue on Appeal)**
**The trial court did not err in punishing Castellanos for a Class A Misdemeanor without a jury finding that her blood alcohol level exceeded 0.15.**

The Texas DWI Statute provides as follows concerning the primary offense and the various levels of punishment:

> (a) A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.
> (b) Except as provided by Subsections (c) and (d) and Section 49.09, an offense under this section is a Class B misdemeanor, with a minimum term of confinement of 72 hours.
> (c) If it is shown on the trial of an offense under this section that at the time of the offense the person operating the motor vehicle had an open container of alcohol in the person's immediate possession, the offense is a Class B misdemeanor, with a minimum term of confinement of six days.
> (d) If it is shown on the trial of an offense under this section that an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed, the offense is a Class A misdemeanor.

Tex. Penal Code § 49.04.

## I. Element or Punishment Enhancement?

The elements of a criminal offense are defined in the Penal Code as "the forbidden conduct, the required culpability, any required result, and the negation of any exception to the offense." Tex. Penal Code § 1.07(a)(22). The Court of Criminal Appeals has referred to this definition in attempting to discern whether any given fact constitutes an element of the offense, as opposed to merely a punishment enhancement, and has also indicated that it

is appropriate to look to the plain language of the statute involved. *See Calton v. State*, 176 S.W.3d 231, 233 (Tex. Crim. App. 2005).

In *Calton*, the Court distinguished true elements of the offense from non-jurisdictional prior convictions alleged merely for enhancement of an offense, which it characterized as "an historical fact to show the persistence of the accused, and the futility of ordinary measures of punishment as related to him." 176 S.W.3d at 233 (quoting *Brooks v. State*, 957 S.W.2d 30, 32 (Tex. Crim. App. 1997)).

Rejecting the State's contention that the prior conviction requirement was not an element of third-degree evading arrest merely because it did not effect the jurisdiction of the trial court, the Court in *Calton* looked to the plain language of the evading statute to conclude that a prior conviction was in fact an element of the third-degree offense. 176 S.W.3d at 234-35.

The Fourteenth Court of Appeals has recently concluded that the Subsection (d) showing of a 0.15 analysis amounts to an element of a separate enhanced DWI offense rather than merely a punishment enhancement. *Navarro v. State*, --- S.W.3d ---, No. 14-13-00706-CR, 2015 WL 4103565, at *6 (Tex. App.—Houston [14th Dist.] July 7, 2015, no. pet. h.) (not yet published). The *Navarro* Court relied in part on a mistaken assumption that Subsection (d) applied "whenever a person charged with

driving while intoxicated is shown to have 'an alcohol concentration level of 0.15 or more,'" and that this element "represents a specific type of forbidden conduct—operating a motor vehicle while having an especially high concentration of alcohol in the body." 2015 WL 4103565, at *6.

However, a close reading of Subsection (d) reveals that it does not require a showing that the defendant actually had a 0.15 alcohol concentration or that he was operating a motor vehicle with that concentration, but only that a later analysis of a specimen of his blood showed a 0.15 concentration at the time the analysis was performed.

This is not an element under the definition of PC 1.07(a)(22). It has nothing to do with the defendant's conduct at the time of the offense or the direct results thereof. Rather, it is a background evidentiary fact having to do with what an analysis of his blood showed. There is no requirement that the fact finder conclude that this analysis is accurate concerning the level of alcohol in the suspect's blood, as the primary DWI element of .08 requires.[1] Rather, it is merely a background evidentiary fact that does not have to prove something about the defendant's conduct to the degree that an element would, but that, for punishment purposes, is sufficient to become a

_____

[1] The baseline alcohol concentration element of an ordinary DWI requires the State to prove that, while operating a motor vehicle in a public place, the defendant "ha[s] an alcohol concentration of 0.08 or more." *See* Tex. Penal Code § 49.01(2)(B).

19

punishment consideration – based, of course, on the inference that the test is accurate.

The legislature clearly knew how to define an element of this nature – it did so for the .08 method of showing intoxication. Yet, in the case of the present enhancement, it broke away from this elemental definition and focused instead only on the fact of the blood analysis itself, and not directly on the defendant's conduct or condition. For this reason, the State believes that Subsection (d) is more properly a punishment consideration, and that *Navarro* was wrongly decided.

## II. Other Considerations.

Other considerations as well suggest that the legislature intended Subsection (d) as a punishment enhancement rather than a separate DWI offense.

Statutes are not interpreted in isolation, but are examined in the context of the entire statutory scheme. *Yazdchi v. State*, 428 S.W.3d 831, 841 (Tex. Crim. App. 2014).

The Subsection (d) enhancement is found in an enumeration of punishment subsections, each incrementally increasing the punishment level for a DWI. Moreover, the next lower enhancement is clearly a punishment enhancer rather than an element, as it does not raise the class of

misdemeanor, nor the maximum punishment, but instead increases only the minimum jail time to six days. Accordingly, the placement of Subsection (d) in the statute is some additional indication that it was also intended as a punishment issue.

In addition, within the broader context of Chapter 49, Intoxication and Alcoholic Beverage Offenses, the legislature clearly knew how to create separate DWI-based offenses, and did so in separate sections of that chapter for a number of other factual scenarios involving a child passenger, Tex. Penal Code §49.045, a resulting assault, Tex. Penal Code § 49.07, and a resulting death. Tex. Penal Code § 49.08. The fact that, instead of giving the 0.15 enhancement its own section, the legislature chose to include it within the general DWI statute, within a list of other punishment enhancements, is a strong indication that the legislature intended it as a punishment enhancement rather than an element of a separate DWI offense.

The Legislature clearly has the power to define even a degree-changing fact concerning the offense as a punishment issue, rather than a guilt-stage element of that offense. Sudden passion, for instance, is defined as a punishment issue in the context of a murder case, in spite of the fact that it changes the degree of the offense. *See* Tex. Penal Code § 19.02 (d). Likewise, the fact that the defendant released the victim in a safe place is an

issue reserved for the punishment stage of trial, in spite of the fact that it changes the degree of an aggravated kidnapping. *See* Tex. Penal Code §20.04 (c & d).

### III. Constitutional Requirements.

Nor is there any constitutional obstacle to making the additional fact of a 0.15 concentration a punishment issue.

The State acknowledges that one extra-textual factor that courts look to in construing an ambiguous statute is the desirability to avoid a potential constitutional violation. *Ex parte White*, 400 S.W.3d 92, 94 (Tex. Crim. App. 2013); *Sisk v. State,* 131 S.W.3d 492, 497 (Tex. Crim. App. 2004).

The Supreme Court has stated as follows concerning the constitutional requirement for a jury finding on all elements of the offense:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: [I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.

*Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348 (2000) (citations omitted); *see also Ex parte Boyd*, 58 S.W.3d 134, 136 (Tex. Crim. App. 2001) (quoting *Apprendi*).

22

However, unlike the federal scheme and those in other states under which the trial judge alone makes the sentencing determination, the Texas sentencing scheme allows the defendant to elect to have the jury assess punishment, under such instructions as may be necessary. *See* Tex. Code Crim. Proc. art. 37.07, §§ 2(b) & 3(b). Accordingly, even if factual determinations like the present one do increase the maximum punishment, they are consistent with *Apprendi* as long as the defendant retains the right to insist on a jury finding thereon beyond a reasonable doubt.

Castellanos' fourth issue on appeal should be overruled.

## PRAYER

For the foregoing reasons, the State respectfully requests that the judgment of the trial court be affirmed.

Respectfully submitted,

/s/ *Douglas K. Norman*

_____
Douglas K. Norman
State Bar No. 15078900
Assistant District Attorney
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)
douglas.norman@co.nueces.tx.us

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1), is 4,799.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that a copy of this brief was e-mailed on July 31, 2015, to Appellant's attorney, Mr. Donald B. Edwards, at mxlplk@swbell.net.

/s/ *Douglas K. Norman*
_____
Douglas K. Norman